# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brentt Sherwood, :
                    Petitioner :
       :
          v. : No. 767 M.D. 2018
       : Submitted: June 11, 2021
Pennsylvania Department of :
Corrections; John E. Wetzel; :
Bruce Beemer; Robert Gilmore; :
Karen Patterson; Tiffany Pauley; :
Joan Kennedy; J. Carter; Theron R. :
Perez; Dorina Varner; Keri Moore; :
Justin Dunkelberger; Jamie Saleski; :
Sarah Snyder; Tracy Shawley; :
Crystal Greenawalt; Leslie Wynn; :
Mindy Andreetti; John/Jane Doe :
(1-99), :
               Respondents :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COHN JUBELIRER              FILED: December 6, 2021

Presently before the Court is the Motion for Summary Relief filed by Brentt Sherwood (Sherwood), *pro se,* and the Motions for Judgment on the Pleadings filed by the Pennsylvania Department of Corrections (DOC), Karen Patterson, Tiffany Pauley, Joan Kennedy, and J. Carter, all of whom are employed by DOC (collectively, DOC Respondents);[1] and Justin Dunkelberger, Jamie Saleski, and

---

[1] Karen Patterson was the Business Manager for State Correctional Institution (SCI) at Greene, where Sherwood was incarcerated; Tiffany Pauley was the Accountant at SCI-Greene; Joan Kennedy was the Accounting Clerk at SCI-Greene; and J. Carter was employed in the Inmate

Sarah Snyder, all of whom are or were employed by Northumberland County (together, County Respondents)[2] (collectively, Respondents), all of which we treat as Applications for Summary Relief under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1532(b). Sherwood filed a pro se Amended Petition for Review (Amended Petition) in this Court's original jurisdiction. Therein, Sherwood challenged the deductions from Sherwood's inmate account for alleged outstanding fines, costs, fees, and restitution on the basis that said deductions are contrary to the various sentencing court orders in Sherwood's criminal matters, are not authorized under any law, and/or violate Sherwood's rights under several provisions of the United States and Pennsylvania Constitutions. Respondents filed Answers and New Matter to the Amended Petition.

Sherwood filed a Motion for Summary Relief arguing that he is entitled to summary relief because there are no material facts in dispute and, as a matter of law, the deductions from his account were unauthorized. Both County Respondents and DOC Respondents filed Motions for Judgment on the Pleadings. In their Motions, Respondents argue they are entitled to summary relief because there are no material facts in dispute and, as a matter of law, this Court lacks jurisdiction to consider the Amended Petition, which they contend is a challenge to a clerk of court's tabulation of fees, costs, fines, and restitution; and the deductions were authorized by court order and/or statute and do not violate any constitutional principles. County Respondents further argue that summary relief should be granted because they are immune from suit based on the doctrine of sovereign immunity. For the reasons that

Accounting Department at SCI-Greene. (Amended (Am.) Petition ¶¶ 7-10.) Joan Kennedy and J. Carter appear to be the same person. (DOC Respondents' Answer ¶ 9.)

[2] Justin Dunkelberger was the former Prothonotary of Northumberland County; Jamie Saleski is the current Prothonotary for Northumberland County; and Sarah Snyder was the Court Costs Supervisor for Northumberland County. (Am. Petition ¶¶ 14-16.)

follow, we deny Sherwood's Motion for Summary Relief, grant in part and deny in part Respondents' Motions for Judgment on the Pleadings, and dismiss the claims in the Amended Petition in part.

## I. BACKGROUND

### A. *Factual Allegations*

In December 2018, Sherwood filed an initial Petition for Review and, thereafter, filed the Amended Petition on April 22, 2019. The allegations of the Amended Petition, as we described in *Sherwood v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 767 M.D. 2018, filed September 9, 2020) (*Sherwood I*), are as follows.

> Sherwood is currently serving sentences for the following criminal convictions from Northumberland County (County). On November 25, 2002, Sherwood was sentenced for convictions at Docket Numbers CP-49-CR-0000633-2002 (Docket 633), CP-49-CR-0000634-2002 (Docket 634), and CP-49-CR-0000827-2002 (Docket 827). Sherwood pled guilty at Docket 634 and was sentenced to "pay costs, a $365.00 fine, fees, . . . and [serve] nine (9) [to] twenty-three (23) months." (Amended (Am.) Petition ¶ 21.) At Docket 633, Sherwood pled *nolo contendere* and was initially sentenced on that date "to pay all costs, a $300.00 fine, fees and [serve] three (3) [to] twenty-three (23) months on Count 2" and to "pay costs, a $365.00 fine, fees, $8,768 in restitution and [serve] twelve[](12) months['] probation on Count 5 to run consecutive to" his conviction on Count 1 of Docket 634. (*Id.* ¶ 21.) Upon the revocation of Sherwood's probation on December 21, 2004, Sherwood was resentenced at Docket 633 "on February 3, 2005[,] to 'pay all costs, fines and fees as previously imposed' and [serve] fourteen . . . [to] twenty-four (24) months on Count 5 to run consecutive to" Count 3 of CP-49-CR-0000126-2004 (Docket 126). (*Id.* ¶ 22.) The sentencing court issued an amended order in Docket 633 on February 28, 2005, sentencing Sherwood "to 'pay all costs, fines and fees as previously imposed' and [serve] four[](4) [to] twelve[](12) months to run consecutive to" Count 1 of Docket 126. (*Id.* ¶ 23.) Sherwood pled guilty at Docket 827 and was sentenced "to pay costs, a $500.00 fine, . . . and [serve] nine (9) [to] twenty-three (23) months." (*Id.* ¶ 29.)

Sherwood asserts that his sentences at Dockets 633, 634, and 827, which occurred "on the same date, at the same time, and by the same judge," constitute "one sentencing event, pursuant to [DOC Administrative Policy] DC-ADM 005, sec. 3.8.7.a," meaning he was liable for only one Crime Victims Compensation Fund (CVCF) fee at those dockets. (*Id.* ¶¶ 30, 53, 75, 78, 81.)

On April 6, 2004, Sherwood was sentenced at Docket 126, based on his guilty plea, "to pay costs, a $300.00 fine[,] and [serve] twelve[](12) months['] probation on Count 1" and to "pay costs, a $500.00 fine[,] and [serve] twelve[](12) months['] probation on Count 3 to run consecutive to Count 1." (*Id.* ¶ 32.) Sherwood's probation was revoked on December 21, 2004, and he was resentenced "on February 3, 2005[,] to 'pay all costs, fines[,] and fees as previously imposed' and [serve] four[](4) [to] twelve[](12) months with credit [on count 1] consecutive to Count 1 [. . .] and to 'pay all costs, fines[,] and fees as previously imposed and [serve] fourteen (14) [to] twenty-eight (28) months on Count 3.'" (*Id.* ¶ 33.) Also[,] as in Docket 633, the sentencing court issued an "Amended Order" on February 28, 2005, that "sentenced [Sherwood] to 'pay all costs, fines[,] and fees as previously imposed' and [serve] twelve[ ](12) [to] twenty-four[ ](24) months on Count 1 to run consecutive to . . . Count 3." (*Id.* ¶ 34.)

Finally, Sherwood was tried and convicted at Docket Number CP-49-0000342-2005 (Docket 342) and was sentenced to death on Count 1 on July 30, 2007. In addition, Sherwood was sentenced "to pay costs, a $2,500.00 fine[,] and [serve] three-and-a-half[ ](3 ½) [to] seven [ ](7) years on Count 3 to run consecutive to Count 1." (*Id.* ¶ 37.)

Between April 2005, when Sherwood entered DOC's custody, and April 6, 2017, no deductions were made from Sherwood's inmate account other than a $60 CVCF fee in April 2008. (*Id.* ¶ 43.) On or about March 24, 2017, Sherwood received a $15,000 settlement check to resolve an action he had filed in federal court against Jeffrey A. Beard, DOC's then-Secretary, and other DOC employees in *Sherwood v. Beard*, (W.D. Pa., 11-CV-040). (*Id.* ¶¶ 45, 62.) The settlement proceeds were "paid from funds appropriated from the Employee Liability Self-Insurance Program (ELSIP)[,]" not "from funds appropriated by the General Assembl[]y or by a political subdivision or an insurance policy purchased by the Commonwealth or political subdivision." (*Id.* ¶ 62 (quoting Section 6608 of the Prison Litigation Reform Act (PLRA), 42 Pa.C.S. § 6608[l]).) Over Sherwood's "adamant object[ions]," [former Pennsylvania Attorney General Bruce] Beemer,

4

by and through an agent of his office, deposited those settlement monies into Sherwood's inmate account. (*Id.* ¶¶ 48-49.) On March 29, 2017, Sherwood requested Pauley, the SCI-Greene Accountant, to issue a check for $5,000 to his mother. (*Id.* ¶ 50.) Kennedy denied Sherwood's request asserting that a 10-day hold was required for all transactions over $3[,]500, requiring Sherwood to resubmit his request on April 7, 2017. (*Id.*)

Before Sherwood could resubmit his request, Pauley notified Sherwood on April 4, 2017, of his "purported court-related monetary obligations" and provided a listing of those obligations. (*Id.* ¶ 51.) This notice stated[,] in relevant part:

> You received a settlement check in the amount of $15,000 from the Commonwealth of [Pennsylvania (Commonwealth),] which was credited to your account on 3/24/1[7[]]. Pursuant to [Section 6608 of the PLRA] . . . , "**[b]y statute in the Pennsylvania state PLRA, any settlement [sic] favor of inmate regarding prison conditions litigation must go first to pay off any outstanding restitution, costs, etc. associated with the criminal sentence. We are specifically forbidden by statute to take this into account in negotiations**." This is a separate statute from [Section 9728(b)(5) of the Sentencing Code, which is commonly referred to as] Act 84[, 42 Pa.C.S. § 9728(b)(5)].

(Am. Petition, Ex. 6-A (emphasis in original).) The notice included "some, but not all, of the 'outstanding' court orders and other court documents . . . Pauley used to determine [Sherwood's] obligations," including: $9[,]838.99 from Docket 633; $252.92 from Docket 634; and $4[,]113.27 from Docket 342, for a total of $14,205.18 to be deducted from Sherwood's inmate account in a lump sum. (Am. Petition ¶ 51.) In addition to these obligations, the notice also stated "that the following purported court-related obligations would be 'put into the system and deductions will occur pursuant to DC-ADM 005'" for $1[,]608.07 from Docket 126 and $855.71 from Docket 827, for a total of $2,463.78. (*Id.*) The notice attached court orders and "Itemized Account of Fines, Costs, Fees, and Restitution" (Itemized Accounts) certified by Dunkelberger for Dockets 633, 634, and 342. (*Id.* ¶ 59.) On April 7, 2017, the following amounts were deducted from Sherwood's prison account by Kennedy pursuant to "Act 84," 42 Pa.C.S. § 9728(b)(5),[] not Section 6608 or DC-ADM 005:[]

$9[,]798.99 (Docket 633), $4[,]113.27 (Docket 634), $815.71 (Docket 827), and $252.92 (Docket 634). (*Id.* ¶¶ 54-55.) Pauley sent Sherwood a corrected version of the notice on April 10, 2017, reflecting that certain CVCF fees had not been included in the amounts for Dockets 633, 634, 342, and 827, which increased the total amount to be deducted "pursuant to [Section ]6608" for those cases to $14,980.89, and an additional amount would be deducted "pursuant to DC-ADM 005" for the CVCF fee for Docket 126. (*Id.* ¶ 52.)

Sherwood corresponded with Pauley and Kennedy on April 12 and 13, 2017, regarding his concerns about the deductions, including the lack of all the outstanding court orders. (*Id.* ¶ 73.) Kennedy responded that these obligations were Act 84 deductions despite the earlier notice identifying Section 6608 as authorizing the deduction. (*Id.*) Sherwood filed a grievance on April 15, 2017, challenging all of the deductions. (*Id.* ¶ 64.) After Sherwood filed his grievance, additional deductions were made for CVCF fees at Dockets 633, 827, and 126. (*Id.* ¶ 65.) Regular deductions were then made from Sherwood's inmate account whenever funds were deposited into the account, and deductions continued despite his pending grievance. (*Id.* ¶¶ 66-67.) Sherwood filed additional grievances regarding these continuing deductions and the additional CVCF fee deductions. (*Id.* ¶¶ 81, 101.) Sherwood continued to send letters to various SCI-Greene officials and employees explaining why the deductions were not authorized. (*Id.* ¶¶ 81, 85-86.) Sherwood's grievances were denied, and those denials were upheld all the way up through [Dorina] Varner, DOC's Chief Grievance Officer.

*Sherwood I*, slip op. at 3-8 (footnotes omitted) (some alterations in the original).

Based on these facts, Sherwood asserted five counts in the Amended Petition, of which only part of Count 1 is currently relevant, as the remaining counts were dismissed.[3] Count 1 seeks declaratory judgment under the Declaratory Judgments

---

[3] Respondents filed preliminary objections to all of the Amended Petition's claims. The Court sustained the preliminary objections as to part of the claims in Count I and all of the claims in Counts II through V in *Sherwood I*. The Court, therefore, dismissed those claims and directed Respondents to file answers to the remaining claims. The Court also dismissed Respondents John E. Wetzel, Robert Gilmore, Theron R. Perez, Varner, Keri Moore, Tracey Shawley, Crystal Greenwalt, Leslie Wynn, and Mindy Andreeti from the matter because the Amended Petition did not state viable claims against them. *See Sherwood I*, slip op. at 27-28.

6

Act, 42 Pa.C.S. §§ 7531-7541, on the basis that the deductions and multiple fees taken for a single sentencing event were not authorized by Act 84, Section 6608, the various sentencing orders, or statutes purporting to impose fees, and, therefore, violated a number of Sherwood's rights under both the United States and Pennsylvania Constitutions. (Am. Petition ¶¶ 153-60.) Sherwood asserts that the unauthorized deductions violate the e*x post facto* clauses found in Article I, Section 10, Clause 1 of the United States Constitution and article I, section 17 of the Pennsylvania Constitution.[4] (*Id.* ¶¶ 155, 160.) Thus, Sherwood seeks to have Respondents reimburse him for that which has been taken from his inmate account, plus costs, interest, attorney's fees, and litigation costs. (*Id.* ¶¶ 167, 171, 176, 180.)

### B. Respondents' Answers and Sherwood's Responses

DOC Respondents and County Respondents filed separate Answers and New Matter, in which they admit to some of the allegations regarding the deductions being taken from Sherwood's inmate account but deny that the deductions were unauthorized or otherwise contrary to law. In their New Matter, both County and DOC Respondents separately assert they are immune from suit and that challenges to the tabulation of costs must be brought in the sentencing court, not this Court. Both County and DOC Respondents aver facts in support of these responses and defenses.

Sherwood filed Answers to Respondents' New Matter, contending that, due to County Respondents' negligence, DOC Respondents improperly took excessive fees out of Sherwood's inmate account. Sherwood asserts that none of the fees,

---

[4] Clause 1 of Section 10 of Article I of the United States Constitution provides, in relevant part, that "[n]o State shall . . . pass any . . . *ex post facto* Law." U.S. CONST. art. I, § 10, cl. 1. Section 17 of article I of the Pennsylvania Constitution states, in pertinent part, that "[n]o *ex post facto* law . . . shall be passed." PA. CONST. art. I, § 17.

7

costs, restitution, and fines were ordered by the sentencing court, and, therefore, said costs were improperly imposed by County Respondents and improperly deducted by DOC Respondents. Sherwood maintains that the statutes cited in the documents provided by County Respondents to support the imposition of the fines, costs, fees, and restitution were either repealed or found unconstitutional. With respect to the claimed immunity, Sherwood denies that immunity poses a bar to the claim that the statutes imposing the costs, fines, restitution, and fees are unconstitutional.

### C. Motions Before the Court

Before the Court is Sherwood's Motion for Summary Relief and Respondents' Motions for Judgment on the Pleadings. Sherwood specifically asserts that Section 6608, relied upon by DOC Respondents to take deductions from Sherwood's federal settlement, is inapplicable because the Commonwealth did not pay for the ELSIP and that, instead, the employees involved in *Sherwood v. Beard* paid for the ELSIP themselves. Sherwood further argues that the deductions are contrary to law because: (1) the statutes cited in the Itemized Accounts provided by County Respondents do not authorize the deductions, were repealed, or were found to be unconstitutional; or (2) their application violates the principles of *ex post facto* or double jeopardy. Sherwood also contends that the sentencing court did not explicitly order the payment of certain costs/fees and, as such, the deductions related to those fees are invalid as a matter of law. Sherwood seeks judgment as a matter of law, asserting there is no genuine issue of material fact as to the inaccuracy and unauthorized nature of the imposition of the challenged costs, fees, and restitution by County Respondents and the deductions made by DOC Respondents.

Both County Respondents and DOC Respondents filed Answers to Sherwood's Motion for Summary Relief, denying that the deductions were not

8

statutorily authorized, were not court ordered, or were unconstitutional. Specifically, County Respondents argue that Section 6608 of the PLRA required the lump sum deduction from Sherwood's settlement proceeds because the money came from ELSIP, which was procured by the Commonwealth to provide protection for Commonwealth employees, officials, and volunteer workers who are exposed to certain liability. As a result, County Respondents argue that Section 6608 provided the authorization to use the settlement funds to pay Sherwood's outstanding costs, fees, fines, and restitution. County Respondents further argue that, because the sentencing court ordered Sherwood to pay costs of prosecution and/or the costs were authorized by statute, Act 84 authorized the subsequent deductions from Sherwood's inmate account. DOC Respondents reply that Pennsylvania law requires that the settlement funds be used to pay Sherwood's outstanding financial obligations and that the deductions were neither illegal nor unauthorized.

Thereafter, Respondents filed their Motions for Judgment on the Pleadings setting forth the same arguments contained in their responses to Sherwood's Motion for Summary Relief, as well as challenging this Court's jurisdiction to consider a challenge to a clerk of court's tabulation of costs, fines, fees, and restitution, which they contend the Amended Petition is doing. County Respondents further assert that they are entitled to summary relief because they are immune from suit under the doctrine of sovereign immunity. Sherwood filed an answer responding that Respondents are not entitled to summary relief for the reasons set forth in his motion. Sherwood further maintains that sovereign immunity does not apply because he is only seeking a declaration that certain statutory provisions are unconstitutional. Finally, Sherwood argues that this matter is properly before the Court pursuant to

9

*Saxberg v. Pennsylvania Department of Corrections*, 42 A.3d 1210 (Pa. Cmwlth. 2012).

## II. DISCUSSION

### A. *The Court's Jurisdiction*

As a threshold matter, we address Respondents' contention that this Court does not have jurisdiction over Sherwood's Amended Petition. Specifically, Respondents assert that Sherwood is challenging the clerk of court's tabulation of costs and such challenges must be brought in the sentencing court. (DOC Respondents' Brief (Br.) at 22; County Respondents' Br. in Support at 7.) Sherwood responds, "the instant matter is properly bef[or]e the Court as this Court has exclusive original jurisdiction[.]" (Sherwood's Br. at 29.) Sherwood argues that the challenge is not "attack[ing] the sentencing court's orders, []or his criminal convictions. [Rather, Sherwood's] challenge relies on the express wording in [the] current valid sentencing orders and [he] challenges those costs, fines, fees[,] and restitution . . . ." (*Id.*)

In the case *sub judice*, Sherwood is attacking the legal authority of County Respondents to impose the challenged costs, fees, fines, and restitution, and of DOC Respondents to take deductions pursuant to Act 84 from Sherwood's inmate account to pay for same. Matters challenging Act 84 deductions are properly brought before this Court in our original jurisdiction. *Saxberg*, 42 A.3d at 1213; *Spotz v. Commonwealth*, 972 A.2d 125 (Pa. Cmwlth. 2009). In *Saxberg*, 42 A.3d at 1213, the Court concluded that the petitioner's challenge of Act 84 deductions on the basis that such were not expressly ordered by the sentencing court was properly brought in this Court's original jurisdiction. Like the challenge in *Saxberg*, Sherwood contends that the sentencing court "did not expressly order any payment of costs,

10

and that without such an express order, [DOC] was unauthorized to make deductions from his [inmate] account." *Id.* Sherwood's Amended Petition is, therefore, properly brought in this Court's original jurisdiction. We now turn to the applicable legal standards governing motions for summary relief.

### B. Applicable Legal Standards

Both motions for summary relief and motions for judgment on the pleadings are governed by Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b). Rule 1532(b) provides that, "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may[,] on application[,] enter judgment if the right of the applicant thereto is clear[.]" Pa.R.A.P. 1532(b). "An application for summary relief is properly evaluated according to the standards for summary judgment." *McGarry v. Pa. Bd. of Prob. & Parole*, 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003). "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Royal v. Se. Pa. Transp. Auth.*, 10 A.3d 927, 929 n.2 (Pa. Cmwlth. 2010); *see also* Pennsylvania Rule of Civil Procedure 1035.2, Pa.R.Civ.P. 1035.2 (setting forth the standard for summary judgment).[5] In considering whether to grant summary judgment, we review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Royal*, 10 A.3d at 929 n.2.

---

[5] Pennsylvania Rule of Appellate Procedure 106 states that, "[u]nless otherwise prescribed by these rules[,] the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas[.]" Pa.R.A.P. 106.

*C.     Section 6608*

Sherwood first argues that summary relief is appropriate, and all of the funds deducted should be returned, because Section 6608 of the PLRA does not authorize the use of the settlement funds to pay any of his costs, fees, fines, and restitution. According to Sherwood, Section 6608 is inapplicable because the source of those settlement funds was the ELSIP, which was funded by the individual defendants themselves and not by the Commonwealth, thereby making the settlement exempt from attachment.  As such, Sherwood claims the use of those funds for the deductions was unauthorized.

Respondents counter that Section 6608 allows for the deduction of Sherwood's settlement monies from *Sherwood v. Beard* to satisfy Sherwood's monetary obligations.  Respondents argue that the ELSIP is not individually funded by Commonwealth employees, but it is the Commonwealth, through the Department of General Services (DGS), that established the ELSIP to shield Commonwealth employees from liability.

Section 6608 of the PLRA states, in relevant part, that

> **[m]onetary damages** awarded to a prisoner in connection with prison conditions litigation or **paid in settlement of prison conditions litigation which is payable from funds appropriated by the General Assembly** or by a political subdivision **or an insurance policy purchased by the Commonwealth** or political subdivision **shall first be used to satisfy any outstanding court orders requiring the prisoner to pay restitution, costs, bail, judgments, fines, fees, sanctions[,] or other court-imposed amounts** in connection with a criminal prosecution or sentence.

42 Pa.C.S. § 6608 (emphasis added).  Sherwood construes this language to mean that if the settlement funds were not payable from funds of the General Assembly,

12

or an insurance policy purchased by the Commonwealth, those funds **cannot** be used.

The settlement that Sherwood received from *Sherwood v. Beard* was paid by the ELSIP. (Am. Petition ¶ 62.) Section 3(c) of the Act of September 28, 1978, P.L. 788, No. 152 (Act 152), directed DGS to develop an efficient risk management and loss prevention program. Section 2404(b) of The Administrative Code of 1929[6] (Administrative Code) provides that DGS shall have the power and duty "to procure public liability insurance covering all State employes, including members of boards and commissions, while engaged in the performance of their duties . . . ." 71 P.S. § 634(b). The Office of Attorney General in Official Opinion Nos. 76-25 and 78-28 interpreted these provisions and concluded that DGS's creation of the ELSIP "satisfies the requirement to procure insurance" that protects Commonwealth agencies and employees from liability. *See* 1978 Pa. Op. Att'y Gen. 107, 1978 WL 21498; 1976 Pa. Op. Att'y Gen. 78-79.[7] Based upon the foregoing, DGS established the ELSIP to provide protection for Commonwealth employees, officials, and volunteer workers who, by virtue of their activities for the Commonwealth, are exposed to certain liability. The ELSIP, therefore, qualifies as insurance that is procured by the Commonwealth and falls within the purview of Section 6608. Because Sherwood received a settlement in *Sherwood v. Beard*, which was paid for by the ELSIP, DOC was statutorily required to first apply the settlement "to satisfy any outstanding court orders requiring the prisoner to pay restitution, costs, bail, judgments, fines, fees, sanctions[,] or other court-imposed amounts in connection with a criminal prosecution or sentence." 42 Pa.C.S. § 6608. As such, Respondents

---

[6] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 634(b).
[7] The 1976 Attorney General Opinion is available at https://www.attorneygeneral.gov/wp-content/uploads/2018/01/1976_AG_Kane_opinions.pdf (last visited Dec. 3, 2021).

are entitled to judgment as a matter of law on this point because the use of Sherwood's settlement funds was authorized.

*D. Act 84*

Sherwood argues that Act 84 did not authorize the deductions from his inmate account. Sherwood contends that because the amended orders from the sentencing court did not explicitly order the payment of the challenged costs, fees, and restitution, Sherwood is not required to pay them, and the deductions taken from his inmate account were, therefore, unauthorized. Sherwood cites this Court's decision in *Spotz*, 972 A.2d 125, to support the contention that the lack of a sentencing order or statutory mandate precludes deduction under Act 84. Sherwood argues that because certain fees, costs, and restitution imposed under Sherwood's various criminal cases were deducted contrary to law, he is entitled to summary relief. Respondents reply that Act 84 authorizes the deductions from Sherwood's inmate account because they were either statutorily imposed or ordered by the sentencing court, which makes *Spotz* inapposite to the instant matter. For these reasons, Respondents maintain that Sherwood is not entitled to summary relief and, instead, they are entitled to that relief.

Act 84 authorizes DOC to deduct restitution and any other court-ordered obligations from an inmate's personal prison account. 42 Pa.C.S. § 9728(b)(5).[8] We have held that Act 84 authorizes deductions of "court-ordered, waivable costs, which are deductible only in the presence of a court order so specifying; however, non-

---

[8] Act 84 was amended by Section 3 of the Act of October 27, 2010, P.L. 949, to add "costs imposed under Section 9721(c.1)" of the Sentencing Code, 42 Pa.C.S. § 9721(c.1), and by Section 4 of the Act of December 18, 2019, P.L. 776, to add "filing fees to be collected under [S]ection 6602(c)" of the Sentencing Code, 42 Pa.C.S. § 6602(c), and a requirement that DOC make deductions from inmate accounts at a statutorily set rate of at least 25%. *See* 42 Pa.C.S. § 9728(b)(5)(i).

waivable, statutorily mandated costs are deductible absent any express court order." *Spotz*, 972 A.2d at 134. Because Sherwood's challenges to the various fees overlap the dockets, we address his arguments to the deductions on the basis that they were not authorized by Act 84 by category, rather than by docket, for ease of discussion.

### 1. Statutorily Mandated Costs

Sherwood asserts that Respondents "abused their discretion by subjecting [him] to wrongful deductions from his account for Act 96"[9] (Crime Commission cost and CVCF fees), "Act 204"[10] (County Court costs), "Act 35"[11] (Offender Supervision Program (OSP) fees), "and Act 45"[12] (Emergency Medical Services (EMS) cost) "costs/fees, which have all been repealed, as well as Act 57"[13] (DNA Detection Fund), "which was ruled UNCONSTITUTIONAL . . . ." (*See* Am. Petition ¶ 41 (emphasis in original).) This claim arises out of the entries on the documents titled "Case Financial Information," found in the dockets for each of Sherwood's criminal cases, and the Itemized Accounts (together, Financial Information) that were provided to Sherwood. These list the assessments against Sherwood by title, followed by a citation to the purported authority for that assessment such as "Crime[] Commission cost (Act 96 of 1984)" or "Commonwealth cost – HB 627 (Act 167 of 1992)." (Am. Petition Ex. 12-B; Ex.

---

[9] The Administrative Code, Act of June 30, 1984, P.L. 458, No. 96, *formerly* 71 P.S. § 180-7.15, repealed by the Act of November 24, 1998, P.L. 882, No. 111.

[10] Magisterial District Reform Act, Act of July 15, 1976, P.L. 1014, No. 204, repealed by the Act of April 28, 1978, P.L. 202.

[11] The Crime Victims Act, Act of August 14, 1991, P.L. 331, No. 35, *formerly* 71 P.S. § 180-7.20, repealed by the Act of November 24, 1998, P.L. 882, No. 111.

[12] Emergency Medical Services Act, Act of July 3, 1985, P.L. 164, No. 45, *formerly* 35 P.S. §§ 6921-6938, repealed by the Act of August 18, 2009, P.L. 308, No. 37.

[13] Act of June 19, 2002, P.L. 394, No. 57, *formerly* 42 Pa.C.S. §§ 4701-4741, repealed by the Act of November 30, 2004, P.L. 1428, No. 185.

61-E.) Sherwood specifically contests: the Crime Commission cost and CVCF fees purportedly authorized by Act 96 in Dockets 633, 827, 342, and 126; the EMS cost purportedly authorized by Act 45 in Docket 633; the fee for the DNA Detection Fund purportedly authorized by Act 57 in Docket 126; the fee to the Catastrophic Loss (CAT) Fund purportedly authorized by Act 24[14] in Docket 633; the OSP fees purportedly authorized by Act 35 in Dockets 633 and 634; and the County Court costs purportedly authorized by Act 204 in Dockets 633, 827, 126, and 342. As there were no effective statutes to mandate the imposition of these costs and fees, Sherwood argues that summary relief is warranted in his favor.

Respondents counter, stating that, even if the cited statutes were not in effect, there were related statutes that authorized the mandatory imposition of the challenged fees and costs that were in effect at the relevant time. Therefore, they argue, the fees and costs were properly calculated by County Respondents and deducted by DOC Respondents. (County Respondents' Br. in Support at 11, 14-18; DOC Respondents' Br at 19-21.) Thus, they contend Sherwood's Motion for Summary Relief should be denied and their Motions for Judgment on the Pleadings granted.

Sherwood first challenges the imposition of the Crime Commission cost and CVCF fees claiming they were improperly imposed and deducted under Act 96. Act 96, which included Section 447.15 of the Administrative Code, *formerly* 71 P.S. § 180-7.15, cannot authorize the costs, Sherwood argues, because it was repealed by the Act of November 24, 1998, P.L. 882, No. 111 (Act 111). Therefore, according to Sherwood, "these costs were improperly deducted from [Sherwood's] prison account by Respondents." (Sherwood's Br. at 8.) While Sherwood is correct that

---

[14] Motor Vehicle Financial Responsibility Law, Act of July 1, 1989, P.L. 115, No. 24.

16

Act 96 was repealed in 1998, it is apparent from Act 111, titled the Crime Victims Act, that the purpose of this "repeal" was "a codification of the statutory provisions repealed in [S]ection 5103 [of Act 111]," which included former Section 447.15 of the Administrative Code. Section 5102 of Act 111, 18 P.S. § 11.5102. By its express terms, Act 111 was "deemed to be a continuation of prior law" and that "[f]unds [and] programs . . . governed by the repealed provisions shall be deemed continued by this act." *Id.* Thus, the costs, fees, and programs found at former Section 447.15 of the Administrative Code were continued under Section 1101 of Act 111, 18 P.S. § 11.1101. The operative language requiring the imposition of a cost upon a person who is convicted of or pleads guilty or nolo contendere to any crime and the disposition of those collected costs to a fund to pay, among others, victims and the Crime Commission remains unchanged. *Compare former* 71 P.S. § 180-7.15(a)-(c), *with* 18 P.S. § 11.1101(a)-(b). Moreover, both former Section 447.15(f) and Section 1101(e) provide that "[n]o court order shall be necessary in order for the defendant to incur liability for costs under this section." *Former* 71 P.S. § 180-7.15(f); 18 P.S. § 11.1101(e). Accordingly, while the cited authority, Act 96, was repealed, its relevant terms regarding the imposition, collection, and disposition of costs were expressly continued in Section 1101 of Act 111. Thus, the imposition of these costs and fees was statutorily mandated, and, as such, their deduction was lawful under Act 84. *Spotz*, 972 A.2d at 134.

Sherwood next argues that the EMS cost was improperly deducted because Act 45, *formerly* 35 P.S. §§ 6921-6938, was repealed by the Act of August 18, 2009, P.L. 308, No. 37 (Act 37). (Sherwood's Br. at 10.) Again, while Sherwood is correct that Act 37 repealed the relevant provisions of Act 45, Act 37 plainly states that the new provisions, found at Chapter 81 of Title 35, 35 Pa.C.S. §§ 8101-8157, of the

Emergency Medical Services System Act, are "a continuation of . . . [Act] 45," that "all activities initiated under [Act 45] shall continue and remain in full force and effect and may be completed under" the new statutory provisions, and that "obligations . . . under [Act 45] are not affected nor impaired by the repeal of [Act 45]." Section 5 of Act 37. One of these new provisions, Section 8153(b)(1), 35 Pa.C.S. § 8153(b)(1), states that the money collected under Section 3121 of the Vehicle Code, 75 Pa.C.S. § 3121, is to be used to fund the Emergency Medical Services Operating Fund. Section 3121 of the Vehicle Code, which was amended by Act 37, in turn, states "[i]n addition to any other costs that may be imposed under this part for a traffic violation, . . . a cost of $20 **shall be** imposed." 75 Pa.C.S. § 3121 (emphasis added). The statutory language of Section 3121 mirrors the prior language found at former Section 14 of Act 45, with the exception that Section 3121 refers to it as a cost and imposes a cost of $20 and former Section 14 of Act 45 referred to it as a fine of $10 that "**shall be** levied." *Compare* 75 Pa.C.S. § 3121, *with former* 35 P.S. § 6934(a) (emphasis added). Thus, the imposition of the EMS cost was statutorily mandated and, as such, its deduction was lawful under Act 84. *Spotz*, 972 A.2d at 134.

Sherwood also argues that the DNA Detection Fund cost was improperly deducted because Act 57, *formerly* 42 Pa.C.S. §§ 4701-4741, was "ruled unconstitutional by this Court in *DeWeese v. Weaver*, 880 A.2d 54 (Pa. Cmwlth. 2005)[.]" (Sherwood's Br. at 15.) While Sherwood is correct that this Court determined that Act 57 was unconstitutional in *DeWeese*, a year prior to that decision, the General Assembly, through the Act of November 30, 2004, P.L. 1428, No. 185, 44 Pa.C.S. §§ 2301-2336, repealed Act 57 and transferred the relevant provisions to Chapter 23 of Title 44 of the Pennsylvania Consolidated Statutes. *See*

18

*DeWeese*, 880 A.2d at 57 n.5.  The language of Section 2322, which states that "[u]nless the court finds that undue hardship would result, a **mandatory cost** of $250 . . . shall automatically be assessed on any person convicted . . . for a felony sex offense or other specified offense," mirrors the language that was found at Section 4722 of Act 57.  *Compare* 44 Pa.C.S. § 2322, *with former* 42 Pa.C.S. § 4722 (emphasis added).  Thus, the imposition of this cost was mandated by statute, and, therefore, its deduction was authorized pursuant to Act 84.  *Spotz*, 972 A.2d at 134.

Sherwood challenges the deductions imposed under the CAT Fund, cited as being authorized by "Act 24 of 1989," claiming that this Act was repealed by the Act of December 12, 1988, P.L. 1120, No. 144 (Act 144).  (Sherwood's Br. at 9.) Contrary to Sherwood's recitation of the statutory history, Act 144 abolished "the Catastrophic Loss Trust Fund," created by Subchapter F of the Act of February 12, 1984, P.L. 26, No. 11 (Act 11), not Act 24.  Section 1798.4 of the Motor Vehicle Financial Responsibility Law (MVFRL), added by Act 24, created the "Catastrophic Loss Benefits Continuation Fund" and states that the "Catastrophic Loss Benefits Continuation Fund shall be composed of funds transferred from the Catastrophic Loss Trust Fund, funds contributed pursuant to [S]ection 6506 [of the Vehicle Code, 75 Pa.C.S. § 6506] (relating to surcharge)[,] and funds earned by the investment and reinvestment of such funds."  75 Pa.C.S. § 1798.4(a)-(b).  Section 5 of Act 24 states that "[a]ll funds in the [Catastrophic Loss Trust] Fund repealed by [Act 144] . . . are hereby transferred to the Catastrophic Loss Benefits Continuation Fund created by this act."  Act 24 also added Section 6506 to the Vehicle Code, which imposes surcharges in addition to any fines, fees, or penalties for certain convictions.  Act 24 was not repealed, provides for the "Catastrophic Loss Benefits Continuation Fund," and requires the imposition of a surcharge for any individual who, like Sherwood, is

19

convicted of driving under the influence (DUI). 75 Pa.C.S. § 6506(a)(7); (*see* Am. Petition, Ex. 66). Accordingly, this fee was statutorily mandated, and its deduction was authorized pursuant to Act 84. *Spotz*, 972 A.2d at 134.

Sherwood challenges the imposition of the OSP fees asserting that they were improperly deducted under Act 35. Sherwood argues that Act 35, which included Section 477.20 of the Administrative Code, *formerly* 71 P.S. § 180-7.20, cannot authorize the costs because it was "repealed by Act 111," and the costs were, therefore, "wrongfully deducted from [Sherwood's] account[.]" (Sherwood's Br. at 11.) While Sherwood is correct that Act 35 was repealed, it is apparent from Act 111 that the purpose of this "repeal" was "a codification of the statutory provisions repealed in [S]ection 5103 [of Act 111]," which included former Section 477.20 of the Administrative Code. Act 111, by its express terms, was "deemed a continuation of prior law" and that "[f]unds [and] programs . . . governed by the repealed provisions shall be continued by this act." 18 P.S. § 11.5102. Thus, the costs, fees, and programs found at former Section 477.20 of the Administrative Code were therefore continued under Section 1102 of Act 111, 18 P.S. § 11.1102. The operative language in Section 1102 mirrors the language from former Section 477.20 of the Administrative Code and authorizes the courts to "impose[,] as a condition of supervision[,] a monthly supervision fee of at least $25 on any offender placed on probation, parole, [or] accelerated rehabilitative disposition . . . ." *Compare* 18 P.S. § 11.1102(c), *with former* 71 P.S. § 180-7.20(a). Thus, the imposition of the OSP fees were mandated by statute, and, therefore, their deduction was authorized under Act 84. *Spotz*, 972 A.2d at 134.

Finally, Sherwood argues that the County Court costs were improperly assessed because Act 204 "was REPEALED by [the Act of April 28, 1978, P.L.

202,] . . . at Part I, Section 2.(a)." (Sherwood's Br. at 8-9 (emphasis in original).) Section 401 of Act 204 imposed mandatory costs in every criminal case. In 1979, the General Assembly enacted Section 1725.1 of the Judicial Code, 42 Pa.C.S. § 1725.1, which was amended in 1980[15] to add language that mirrors the language at former Section 401 of Act 204, with an exception as to the amount of the costs and that courts of common pleas, in addition to the "minor judiciary," were now to charge those costs. Thus, since 1980, Section 1725.1(b) imposes mandatory county court costs for criminal matters, the amount of which varies depending on the grading of the offense. 42 Pa.C.S. § 1725.1(b). As such, the County Court costs were statutorily mandated, and, therefore, their deduction was authorized under Act 84. *Spotz*, 972 A.2d at 134.

Based on the foregoing, there are statutes that authorize the mandatory imposition of the challenged costs, and, therefore, County Respondents did not unlawfully impose such costs and fees and the deduction of the funds from Sherwood's inmate account by DOC Respondents to pay those costs and fees was authorized by Act 84. As such, Sherwood has failed to establish an entitlement to summary relief on these claims. We will, therefore, deny Sherwood's Motion and grant Respondents' Motions with respect to these statutorily imposed costs.[16]

### 2. Costs Imposed by Court Order

Sherwood next argues that certain costs, fees, and restitution for which monies were deducted were not imposed by court order and, therefore, were improperly assessed against Sherwood. Because the "court orders [] failed to expressly impose

---

[15] Section 2 of the Act of July 10, 1980, P.L. 513.

[16] It would appear that some of this dispute could have been avoided if the relevant forms were updated.

21

said costs," Sherwood asserts that County Respondents were not authorized to impose the costs and DOC Respondents were not authorized to deduct monies from Sherwood's inmate account for their payment. (Sherwood's Br. at 5.) In particular, Sherwood contests the following: the Commonwealth costs in Dockets 633, 827, 126, and 342; the Judicial Computer Project Fee in Dockets 633, 827, 126, and 342; the Crime Lab User Fee, the Clerk Automation Fee, and Costs of Transportation in Docket 342; and the $8,768.99 and $500 in restitution in Docket 633. (Sherwood's Motion ¶¶ 13a, j, r, s; 20a, h; 23a, i; 26a-c, e, k.) Relying on *Spotz*, Sherwood argues that because the sentencing orders did not specifically impose or reimpose these costs, fees, or restitution, the deductions to pay those amounts were improper.[17]

Respondents counter that the deductions were authorized either expressly in the sentencing court's orders or by the sentencing court's imposition of costs of prosecution, which encompasses a variety of court costs. (DOC Respondents' Br. at 20; County Respondents' Br. in Support at 5, 12, 20, 21, 24.) Respondents assert that, although the sentencing court did not explicitly state all of the different costs that would be imposed on Sherwood, the sentencing court was not required to do so. (DOC Respondents' Br. at 20-21; County Respondents' Br. in Support at 5, 10-12.) As such, Respondents argue that the fees, costs, and restitution were properly assessed against Sherwood despite the sentencing court not expressly enumerating all the costs and fees it imposed. In addition, County Respondents argue that the sentencing court did sentence Sherwood to pay an additional $500 in restitution as reflected in the Sentencing Sheet at Docket 633. (County Respondents' Br. in Opposition, Exhibit (Ex.) A.)

---

[17] We need not address whether the County and State Court Costs, OSP fees, and CAT fund fees were imposed via a valid sentencing order because we determined that these costs were mandated by statute.

22

"When the judge has authorized the imposition of costs, [DOC] may collect those costs from a prisoner without physical possession of the court order; a form signed by the Clerk of Court is sufficient authorization." *See Richardson v. Pa. Dep't of Corr.*, 991 A.2d 394, 396-97 (Pa. Cmwlth. 2010) (citing *Herrschaft v. Dep't of Corr.*, 949 A.2d 976 (Pa. Cmwlth. 2008)). We have additionally observed that it is a common practice for a sentencing judge to order a defendant to pay costs and leave the assessment of such costs to the clerk of court. *Id.* at 397. Further, when it comes to costs of prosecution and court costs, *Richardson* also held that such costs are identical and "that it was unnecessary for the court order to set forth the specific costs to be collected." *Commonwealth v. Mazer*, 24 A.3d 481, 483-84 (Pa. Cmwlth. 2011) (citing *Richardson*, 991 A.2d at 397). Therefore, a sentencing judge is not required to explicitly enumerate every type of court cost or cost of prosecution in a sentencing order to authorize a clerk of court to include such costs and for them to be deducted from an inmate's account by DOC. A general order ordering a defendant to pay costs is sufficient.

Here, the sentencing court imposed the challenged costs on Sherwood and/or the costs were otherwise required by statute, thereby making Sherwood's reliance on *Spotz*, in which some of the challenged costs were neither imposed by a court order nor statutorily mandated, misplaced. In each sentencing order, the sentencing court expressly sentenced Sherwood to "pay the costs of prosecution." (Am. Petition, Exs. 6-B, 6-D, 6-I, 19-B, 71-73.) In addition, while Sherwood was initially sentenced to probation at Docket 633, which he subsequently violated, in the probation revocation sentencing order, the sentencing court reimposed "all the costs, fines, and fees as **previously imposed**" in Sherwood's original sentence, which included "the costs of prosecution" and the $8,768.99 in restitution. (*Id.*, Exs. 6-B,

23

24-B (emphasis added).)  By ordering Sherwood to pay the "costs of prosecution," the sentencing court authorized the imposition of not only the costs related to the prosecution, but also the costs and fees that can be categorized as "court costs," *Richardson*, 991 A.2d at 397, despite not elaborating exactly the amounts that those costs and fees would be, *Spotz*, 972 A.2d at 134.  Reviewing the challenged costs and fees, they fall within this authorization and/or were otherwise authorized by statute.

The Commonwealth costs challenged by Sherwood are authorized by Section 3571 of the Judicial Code, 42 Pa.C.S. § 3571, which provides that the Commonwealth shall be entitled to receive costs, fees, or fines that are imposed by law and payable to the Commonwealth, including particular costs associated with various crimes based on the grading of the offense.  To the extent these costs included those borne by the Commonwealth in Sherwood's prosecution, they would be encompassed in the orders sentencing Sherwood to pay the costs of prosecution. Thus, these costs were authorized by statute and/or the sentencing orders and could be deducted under Act 84.  *Spotz*, 972 A.2d at 134.

The Clerk Automation Cost fee charged at Docket 342 is set forth in Section 1725.4(b) of the Judicial Code, which authorizes the charging and collection of an automation fee "for the initiation of any action or legal proceeding."  42 Pa.C.S. § 1725.4(b).  Similarly, the Judicial Computer Project fee is required to be charged for the initiation of any criminal proceeding "and a conviction is obtained or guilty plea is entered" pursuant to Section 3733(a.1)(1)(iii) of the Judicial Code, 42 Pa.C.S. § 3733(a.1)(1)(iii).  As these fees were charged as part of Sherwood's convictions, they can be classified as a "cost of prosecution" that Sherwood was sentenced to pay.  Further, Section 9728(g) of the Sentencing Code expressly provides that "[a]ny

24

. . . filing fees and costs of the . . . clerk of courts or other appropriate governmental agency . . . shall be borne by the defendant . . . ." 42 Pa.C.S. § 9728(g). Thus, these costs were authorized by statute and/or the sentencing orders and could be deducted under Act 84. *Spotz*, 972 A.2d at 134.

The Crime Lab User fee is "a criminal . . . laboratory user fee" charged to "[a] person . . . who . . . is convicted of a crime as defined in [Section 106 of the Crimes Code,] 18 Pa.C.S. § 106[,]" which includes a person who is convicted of criminal homicide, 18 Pa.C.S. § 106(b), for the "laboratory services [that] **were required to prosecute** the crime or violation . . . ." Section 1725.3(a) of the Judicial Code, 42 Pa.C.S. § 1725.3(a) (emphasis added). As these services were used as part of the prosecution and conviction of Sherwood for criminal homicide at Docket 342, they fall within the trial court's sentencing order that Sherwood pay the costs of prosecution. Further, Section 1725.3(d) expressly requires that a person who is so convicted "be sentenced to pay" this fee and that this fee "shall be imposed notwithstanding any other provision of law to the contrary." 42 Pa.C.S. § 1725.3(a), (d). Similarly, the Costs of Transportation are statutorily categorized as a cost payable by the defendant by Section 9728(g) of the Sentencing Code. As these fees are encompassed in the sentencing order at Docket 342 and/or are statutorily mandated, their deduction was authorized under Act 84. *Spotz*, 972 A.2d at 134.

Sherwood also challenges the deduction of funds to pay $8,768.99 and $500 in restitution at Docket 633. As to the $8,768.99 in restitution, it is apparent from the initial sentencing order that Sherwood was sentenced to pay this restitution. (Am. Petition, Ex. 19-B.) Although Sherwood points out that the amended order did not specifically state "restitution," the sentencing court was clearly requiring Sherwood to pay the "previously imposed" amounts, which included the $8,768.99

25

in restitution. (Am. Petition, Ex. 24-B.) Thus, Sherwood was sentenced to pay this restitution in the sentencing orders in Docket 633, and Act 84 authorizes the deduction of monies from Sherwood's inmate account for that restitution.

As to the $500 in restitution, there appears to be an outstanding question of material fact as to whether this was part of Sherwood's sentence. A review of the sentencing orders in this docket reveals that the $500 in restitution was not referenced therein. However, the sentencing judge also signed a sentencing sheet the same day that specifically imposed both the $8,768.99 and the $500 in restitution. (County Respondents' Br. in Opposition, Ex. A.) At this stage of the proceedings, we are faced with two documents related to Sherwood's sentencing, both signed by the sentencing judge on the same day, reflecting how much restitution Sherwood was required to pay. Because there remains a genuine issue of material fact on whether the lack of including the $500 in the sentencing order was merely a clerical or scrivener's error, such an issue should be addressed by the sentencing court, *see Commonwealth v. Borrin*, 12 A.3d 466, 471 (Pa. Super. 2011)[18] (holding that "a trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders"), *aff'd*, 80 A.3d 1219 (Pa. 2013), or reflected an intent to exclude that amount from Sherwood's sentence, we cannot grant summary relief with regard to that restitution.[19]

For these reasons, Sherwood's arguments that these costs, fees, and restitution are not authorized, as a matter of law, are not persuasive. It is apparent from the

---

[18] In general, Superior Court decisions are not binding on this Court, but they may be considered for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[19] We note that a review of Sherwood's docket reveals that there remains an outstanding balance of $507 for restitution. *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docket Number=CP-49-CR-0000633-2002&dnh=5pE8kSy8JSRanjdyib%2BoIg%3D%3D (last visited Dec. 3, 2021).

26

sentencing orders and statutes that the deduction of these challenged costs, fees, and $8,768.99 in restitution was authorized under Act 84. Therefore, Sherwood failed to establish an entitlement to summary relief with respect to the costs, fees, and restitution imposed by the sentencing court and we will deny Sherwood's Motion for Summary Relief. Respondents have established an entitlement to summary relief with regard to the challenged costs, fees, and $8,768.99 in restitution, but not, at this time, to the $500 in restitution. Thus, their Motions for Judgment on the Pleadings are denied as to the $500 in restitution, but will be granted with regard to the other costs, fees, and restitution challenged.

### E. Constitutional Arguments

#### 1. Ex Post Facto

Sherwood argues that Respondents

> abused its/their discretion by subjecting [Sherwood] to wrongful deductions from [Sherwood's] prison account using *ex post facto* laws, as the "Acts[,]"[] which are penal in nature, were not enacted until after the crimes [Sherwood] was convicted of in the cases at [D]ockets[] [633, 634, 827, 342, and 126], were committed, and thus [are] *ex post facto*.

(Am. Petition ¶ 42.) Sherwood specifically claims that the deductions made in the following categories violate the prohibition against *ex post facto* laws: Firearm Education and Training Fund; Judicial Computer Project; Constable Education Training; Access to Justice (ATJ) Account; Act 198 of 2002[20] (Substance Abuse Education Act); and Costs of Transportation. (*Id.*) County Respondents counter stating that the statutes imposing these costs do not violate this prohibition,

---

[20] Act of December 9, 2002, P.L. 1539, No. 198, 18 Pa.C.S. § 7508.1.

explaining how each statutory provision lawfully authorizes the challenged costs. (County Respondents' Br. in Support at 19-25.)

"A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" *Commonwealth v. Wall*, 867 A.2d 578, 580 (Pa. Super. 2005) (quoting *Commonwealth v. Fleming*, 801 A.2d 1234, 1237 (Pa. Super. 2002)) (internal citations omitted). "Often following a criminal conviction, the trial court places a monetary imposition on the defendant." *Id.* at 582. "The imposition of costs and restitution [is] not considered punishment." *Id.* "Both costs and restitution are designed to have the defendant make the government and the victim whole." *Id.*

Sherwood challenges the imposition of the cost associated with the Firearm Education and Training Fund claiming that this cost was "repealed and replaced by" Section 6308 of the County Probation Officers' Firearm Education and Training Law (Training Law), "61 Pa.C.S.[] § 6308, effective October 13, 2009, which was after the crimes [Sherwood] was convicted of were committed in 2001 and 2002." (Sherwood's Br. at 10.) The challenged Firearm Education and Training Fund was established by Section 8 of the Act of December 27, 1994, P.L. 1354, No. 158, and the costs were authorized by Section 8(b) of the then-County Probation and Parole Officers' Firearm Education and Training Fund, *formerly* 61 P.S. § 332.8. While these provisions were later repealed by the Act of August 11, 2009, P.L. 147, No. 33 (Act 33), Act 33 stated, in a note to Section 6308, 42 Pa.C.S. § 6308, that "[t]he County Probation Officers' Firearm Education and Training Fund **is a continuation** of the County Probation and Parole Officers' Firearm Education and Training Fund." (Emphasis added.) That provision, now located at Section 6308(b)(1) of the

Training Law, states that "[a] person who . . . pleads guilty or nolo contendere or is convicted of a felony or misdemeanor shall . . . be sentenced to pay costs of $5." 61 Pa.C.S. § 6308(b)(1). This current version restates the prior language and imposes the same $5.00 charge. *Compare* 61 Pa.C.S. § 6308(b)(1), *with former* 61 P.S. § 332.8(b). Thus, the $5.00 cost is a continuation of the prior statute and its assessment and deduction does not violate the prohibition against *ex post facto* laws.

Sherwood next challenges the costs imposed by the Judicial Computer Project and the ATJ arguing that such costs are *ex post facto* because "[t]he crimes [Sherwood] was convicted of at [Docket 633] were committed in 2001 and 2002, before" the Act of October 2, 2002, P.L. 841, No. 122 (Act 122) "was enacted." (Sherwood's Br. at 11.) These challenged costs are specifically mandated in Section 3733 of the Judicial Code, which was enacted by Section 2 of the Act of June 30, 1988, P.L. 464, No. 79. Section 3733(a) states "**[b]eginning July 1, 1987**, and thereafter, the total of all fines, fees[,] and costs collected by any division of the unified judicial system which are in excess of the amount collected from such sources in the fiscal year 1986-1987 shall be deposited in the Judicial Computer System Augmentation Account" (Judicial Computer Account). 42 Pa.C.S. § 3733(a) (emphasis added). Section 3733(a.1), added by Section 1 of the Act of June 29, 1990, P.L. 257, authorized the imposition of "additional fees" and portions of the additional fees would be deposited in the Judicial Computer Account for various fiscal years. *See* 42 Pa.C.S. § 3733(a.1). Thus, the imposition and deduction of the Judicial Computer Project fees is not a violation of the prohibition against *ex post facto* laws. As for the ATJ fees, the General Assembly, via Act 122, authorized the creation of the ATJ, the purpose of which is to provide civil legal assistance to poor or disadvantaged persons, Section 4905 of the Judicial Code, 42 Pa.C.S. § 4905,

into which part of the fees **that had been authorized in subsection (a.1) of Section 3733 to be charged since 1990** would now be deposited. 42 Pa.C.S. § 3733(a.1)(2). Act 122 did not impose any new costs; it simply changed where part of those previously imposed costs would be deposited. As such, we discern no *ex post facto* violation by the assessment and deduction of these challenged costs.[21]

Sherwood challenges the fee imposed by the Constable Education Training Act, arguing the fee is *ex post facto* because "the crime [Sherwood] was convicted of at [Docket 827] was committed in 2002" and the cost imposed was authorized by Act 33, which did not become effective until October 13, 2009. (Sherwood's Br. at 14.) However, our review of Act 33 reveals that it does not address such costs. Rather, the Constable Education and Training Program was created by Section 1 of the Act of June 15, 1994, P.L. 265, No. 44 (Act 44), which also provided, in Section 2949(b) of the Judicial Code, the mandatory imposition of a $5 surcharge per docket in a criminal case. *See former* 42 Pa.C.S. § 2949(b). Section 2949 was in effect until December 7, 2009, at which time the Act of October 9, 2009, P.L. 494, No. 49 (Act 49), transferred that provision to Section 7149 of Title 44, 44 Pa.C.S. § 7149. Act 49 states, in a note to Section 7141 of Title 44, 44 Pa.C.S. § 7141, that the "provisions on constable training have been transferred from former 42 Pa.C.S. §§ 2941 through 2949 to 44 Pa.C.S. Ch. 71 Subch. E." Section 2949(b)'s language imposing the $5 surcharge per docket in each criminal case is continued in Section 7149. *Compare* 44 Pa.C.S. § 7149, *with former* 42 Pa.C.S. § 2949(b). Therefore,

---

[21] Further, it appears that Sherwood has admitted that the ATJ costs were authorized in Sherwood's response to County Respondents' Motion for Judgment on the Pleadings. (County Respondents' Motion for Judgment on the Pleadings ¶¶ 78-81; Sherwood's Answer to County Respondents' Motion for Judgment on the Pleadings ¶¶ 82-85.) The discrepancy in the numbering of the paragraphs is due to a numbering error in County Respondents' Motion.

the statutorily imposed $5 fee has been in effect since 1994 and its assessment and deduction does not violate the prohibition against *ex post facto* laws.

Sherwood next challenges the imposition of the cost associated with the Substance Abuse Education Act, Section 7508.1 of the Crimes Code, 18 Pa.C.S. § 7508.1. Sherwood argues that the costs associated with the Substance Abuse Education Act "are *ex post facto*[] because the crimes [Sherwood] was convicted of at [Docket 126] were committed in 2002, before this Act was enacted" and that "said statute is penal in nature." (Sherwood's Br. at 17.) Section 7508.1(b) of the Crimes Code provides, in relevant part:

> **Imposition.--**Unless the court finds that undue hardship will result, a mandatory cost of $100, which shall be in addition to any other costs imposed pursuant to statutory authority, shall automatically be assessed on any individual convicted . . . or . . . who pleads guilty or nolo contendere for a violation of the act of April 14, 1972[,] []P.L. 233, No. 64[], known as The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)[22]], or [for DUI] . . . .

18 Pa.C.S. § 7508.1(b). These costs are then split between county substance abuse treatment or prevention programs and the Commonwealth for use in a similar fund. 18 Pa.C.S. § 7508.1(d). As the Superior Court aptly stated in *Wall*, "[o]ften following a criminal conviction, the trial court places a monetary imposition on the defendant. The **imposition of costs and restitution** are not considered punishment." 867 A.2d at 582 (emphasis added). We agree with this proposition, that the cost imposed in Section 7508.1(b) is not a form of punishment, particularly where part of Sherwood's sentence was to obtain drug and alcohol evaluation and treatment if recommended. (Am. Petition, Exs. 72-73.) Section 7508.1(b) differs from Section 7508.1(c), which the Superior Court, in *Wall*, held was penal in nature

---

[22] 35 P.S. §§ 780-101-780-144.

because it imposed an **additional** $200 assessment "to all persons convicted for violation of 75 Pa.C.S.[] § 3731 (now § 3802[ (relating to driving under the influence)]) where the amount of alcohol by weight in the blood is 0.15% (now 0.16)[] or greater." 867 A.2d at 580 (footnote omitted). While *Wall* found the retrospective application of Section 7508.1(c) unconstitutional, the Superior Court did not find Section 7508.1(b) unconstitutional. As such, the cost associated with the Substance Abuse Education Act does not violate the prohibition against *ex post facto* laws and was properly assessed against Sherwood.

Sherwood argues that the Cost of Transportation fee was improperly assessed because Section 9728(g) of the Sentencing Code went into effect in 2006, which was two years after Sherwood committed the crime of which he was convicted; Section 9728(g) was therefore retroactively applied in violation of the prohibition against *ex post facto* laws. However, Section 9728(g) was effectively amended before Sherwood was sentenced. Section 1 of the Act of November 9, 2006, P.L. 1352, No. 143 (Act 143), specifically amended Section 9728(g) of the Sentencing Code to include transportation costs in response to *Fordyce v. Clerk of Courts*, 869 A.2d 1049, 1053 (Pa. Cmwlth. 2005), which held that a sentencing court could not assess transportation costs as a cost of prosecution because such costs were not authorized by statute. Sherwood was sentenced under Docket 342 on July 30, 2007, after Act 143 went into effect on November 9, 2006. This Court rejected a similar *ex post facto* argument regarding costs of transportation in *Commonwealth v. Morales-Rivera*, 67 A.3d 1290, 1293 (Pa. Cmwlth. 2013), holding that "[b]ecause the amended version of Section 9728(g) was in effect at the time of [Morales-Rivera's] sentencing, it applied to Morales-Rivera." Here, as in *Morales-Rivera*, the amended

32

version of Section 9728(g) was in effect at the time of Sherwood's sentencing, and, therefore, its application did not violate the prohibition against *ex post facto* laws.[23]

## 2. Double Jeopardy

Finally, Sherwood argues that certain costs, which were charged twice on the same docket, constitute double jeopardy[24] because there was only one sentencing event. Specifically, Sherwood claims that the multiple costs related to the Crime Victims Act, the OSP, and the Substance Abuse Education Act are invalid because they violate the prohibition against double jeopardy. County Respondents argue that, although there may have been one sentencing event, said event was "for separate acts, offenses, and/or adjudications and[,]" therefore, the costs were permitted under each docket number. (County Respondents' Br. in Support at 15 (citing *In re C.A.G.*, 89 A.3d 704 (Pa. Super. 2014)).) County Respondents also argue that, because Section 1102 of the Crime Victims Act provides for a monthly supervision fee, "it makes sense that there could be more than one entry as it may not be just a one-time assessment." (*Id.* at 17-18.) Finally, County Respondents argue that the costs imposed under the Substance Abuse Education Act are not double jeopardy because the "act/statute provides that under certain conditions – which were met here-- \$200[] is to be assessed." (*Id.* at 23. (citing 18 Pa.C.S. § 7508.1).) County Respondents explain that because Sherwood "plead[ed] guilty

---

[23] Sherwood also argues that \$1,319.40 was assessed for this cost, but the record shows that only \$100.70 was assessed for the cost of transportation. According to the docket sheet at Docket 342, it appears that a payment for \$1,319.40 was taken for this cost, but then \$1,218.70 was adjusted to rectify this error. (Am. Petition, Ex. 65-C.)

[24] Section 10 of article I of the Pennsylvania Constitution provides: "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb[.]" PA. CONST. art. I, § 10. The Fifth Amendment to the United States Constitution provides in relevant part that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V.

or nolo contendere to two violations of the [Drug Act]," the $200 was properly assessed—$100 for each violation. (*Id.* at 24.)

It is well settled that "[t]he double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense." *Commonwealth v. States*, 891 A.2d 737, 741 (Pa. Super. 2005) (citations omitted). "The protections afforded by double jeopardy are generally recognized to fall within three categories—(1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *Commonwealth v. Keenan*, 530 A.2d 90, 93 (Pa. Super. 1987). At issue here is the third category, "protection against multiple punishments for the same offense." *Id.*

> To determine whether a defendant's protection against multiple punishments for the same offense has been violated, this Commonwealth applies the test set forth in *Blockburger v. U.S.*, 284 U.S. 299 . . . (1932): where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Commonwealth v. Beckwith*, 674 A.2d 276, 279 (Pa. Super. 1996) (citing *Commonwealth v. Caufman*, 662 A.2d 1050 (Pa. 1995); *Commonwealth v. Decker*, 664 A.2d 1028 (Pa. Super. 1995)).

Sherwood argues that the costs imposed by the Crime Victims Act constitute double jeopardy because "[D]ockets [633], [634], and [827] were consolidated into one sentencing event, but [Sherwood] was charged for [the Crime Commission] cost[] twice, $25.00 and $15.00." (Sherwood's Br. at 8.) Section 1101(a)(1) of the Crime Victims Act provides that "[a] person who pleads guilty or nolo contendere

or who is convicted of a crime shall . . . pay costs . . . ." 18 P.S. § 11.1101(a)(1). This Court addressed a similar issue in *Commonwealth v. Klingensmith* (Pa. Cmwlth., No. 1611 C.D. 2016, filed April 18, 2017).[25] There, we stated "[n]othing in th[][e] language [of the Crime Victims Act] limits [CVCF] fees for separate criminal convictions to a single assessment simply because the defendant is sentenced on the same day by the same judge." *Id.*, slip op. at 4. This Court explained "where a defendant pleads guilty or is convicted in **separate criminal cases based on different criminal episodes**, the mandatory [CVCF] fee is properly assessed in **each** of those criminal cases, even if joint proceedings on the cases are held before the trial court." *Id.* (emphasis added) (citing *C.A.G.*, 89 A.3d at 710-13) (holding that, in juvenile delinquency cases, separate CVCF fees were properly assessed for each juvenile petition based on a different delinquent episode, even if the cases are heard and adjudicated together). We concluded that "the guilty pleas for which the [CVCF] fees were assessed were separate cases based on entirely different criminal episodes on different dates." *Id.*, slip op. at 5. Here, like in *Klingensmith*, the conduct for which Sherwood was convicted at Dockets 633, 634, and 827, was based on different criminal episodes on different dates. The conduct for which Sherwood was convicted under Docket 633 was DUI and Criminal Mischief on July 8, 2000; under Docket 634 was for Manufacture with Intent to Deliver on January 15, 2002; and under Docket 827 was for Manufacture with Intent to Deliver on June 5, 2002. (CP-49-CR-0000633-2002 Criminal Information; CP-49-CR-0000634-2002 Criminal Information; CP-49-CR-0000827-2002 Criminal

---

[25] Unreported opinions of this Court may be cited for persuasive value in accordance with Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Information.[26])  As a result, the multiple costs imposed pursuant to the Crime Victims Act were properly imposed and do not, therefore, constitute double jeopardy.

Sherwood next argues that the fees for the OSP were improperly assessed because Sherwood "was charged for these costs twice on [each docket at Dockets 633 and 634], and therefore violated the prohibition against double jeopardy." (Sherwood's Br. at 11-12, 13.)  Section 1102(c) of the Crime Victims Act provides, in relevant part:

> The court shall impose[,] as a condition of supervision[,] a monthly supervision fee of at least $25 on any offender placed on probation [or] parole . . . .  Of the fee collected, 50% shall be deposited into the County Offender Supervision Fund established in each county . . . , and the remaining 50% shall be deposited into the State Offender Supervision Fund . . . .

18 P.S. § 11.1102(c).  This is reflected on Sherwood's docket sheets under Docket 633 and 634, as well as the Financial Information forms, where it is indicated that, respectively, $152.71 was deposited into Northumberland County's fund and $152.71 into the state fund.  Because the monthly fee is statutorily authorized to be split evenly between the county fund and the state fund, the "two" OSP fees on these Dockets do not violate the prohibition against double jeopardy and were, therefore, properly assessed.

Finally, Sherwood argues that the $200 in costs imposed under the Substance Abuse Education Act violate double jeopardy because Sherwood "was charged for

---

[26] The Amended Petition provided only portions of Sherwood's various docket sheets, and the complete docket sheets for these dockets are available at https://ujsportal.pacourts.us/CaseSearch (last visited Dec. 3, 2021).  The Court may take judicial notice of official court records and public documents in connected cases.  Pennsylvania Rule of Evidence 201(b)(2), Pa.R.E. 201(b)(2); *Germantown Cab Co. v. Phila. Parking Auth.*, 27 A.3d 280, 283 n.8 (Pa. Cmwlth. 2011).

[Substance Abuse Education Act] costs twice on [Docket 126]." (Sherwood's Br. at 17.) County Respondents assert Sherwood pled guilty to two violations of the Drug Act and, therefore, two assessments for costs under the Substance Abuse Education Act were authorized by Section 7508.1(b). (County Respondents' Br. at 23-24.) Section 7508.1(b) provides, in relevant part, that

> **a mandatory cost of $100** . . . shall automatically be assessed on any individual convicted, adjudicated delinquent[,] or granted Accelerated Rehabilitative Disposition or any individual **who pleads guilty** or nolo contendere **for a violation of. . . [the Drug Act]** . . . .

18 Pa.C.S. § 7508.1(b) (emphasis added).

Under Docket 126, Sherwood pled guilty to (1) possession with intent to deliver and (2) possession of a controlled substance, both in violation of the Drug Act, specifically, Section 13(a)(16) and 13(a)(30) of the Drug Act, 35 P.S. § 780-113(a)(16) (prohibiting "[k]nowingly or intentionally possessing a controlled . . . substance by a person not registered under this act"); 35 P.S. § 780-113(a)(30) (prohibiting the "manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act"). (Am. Petition, Ex. 72-73.) Sherwood asserts that he was assessed $200, which "is only permitted under 18 Pa.C.S.[] §[] 7508.1(c) [,][27]" not subsection (b). (Sherwood's Br. at 17.) Sherwood is correct that Section 7508.1(c) authorizes the imposition of

---

[27] Section 7508.1(c) provides:

> **Additional assessment.--**In addition to the assessment required by subsection (b), a person convicted of or adjudicated delinquent for a violation for 75 Pa.C.S. § 3802 shall be assessed $200 where the amount of alcohol by weight in the blood of the person is equal to or greater than 0.16% at the time a chemical test is performed on a sample of the person's breath, blood, or urine.

18 Pa.C.S. § 7508.1(c).

37

a $200 cost, but that is clearly inapplicable here as that subsection relates to DUI convictions, not Drug Act violations. However, in reviewing Section 7508.1(b), it is not clear whether the cost is intended to be assessed per violation of the Drug Act charged or per criminal incident.[28] Further, it is not clear from the record whether the two violations of the Drug Act to which Sherwood pled guilty arose out of a single criminal incident or separate criminal incidents. Given the lack of clarity in the statutory language and the record, neither Sherwood nor Respondents have established that it is clear as a matter of law that charging Sherwood this cost twice at Docket 126 was either authorized or prohibited by Section 7508.1(b). Therefore, summary relief cannot be granted with regard to the $200 assessed costs under the Substance Abuse Education Act.[29]

## III. CONCLUSION

For the foregoing reasons, we deny Sherwood's Motion for Summary Relief in its entirety and deny Respondents' Motions for Judgment on the Pleadings with respect to $500 restitution at issue in Docket 633 and the $200 cost pursuant to Section 7508.1(b) of the Crimes Code at issue in Docket 126. However, we grant Respondents' Motions for Judgment on the Pleadings as to all other claims and dismiss the Amended Petition to that extent.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[28] We note that currently before the Court in its original jurisdiction is a challenge to the alleged assessment of duplicative costs by courts of common pleas, including costs arising under the Substance Abuse Education Act. *See McFalls v. 38th Judicial Dist.* (Pa. Cmwlth., 4 M.D. 2021).

[29] Because of our disposition, we do not reach Respondents' other argument involving governmental/sovereign immunity.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brentt Sherwood,                               :
                          Petitioner           :
                                               :
            v.                                 :     No. 767 M.D. 2018
                                               :
Pennsylvania Department of                     :
Corrections; John E. Wetzel;                   :
Bruce Beemer; Robert Gilmore;                  :
Karen Patterson; Tiffany Pauley;               :
Joan Kennedy; J. Carter; Theron R.             :
Perez; Dorina Varner; Keri Moore;              :
Justin Dunkelberger; Jamie Saleski;            :
Sarah Snyder; Tracy Shawley;                   :
Crystal Greenawalt; Leslie Wynn;               :
Mindy Andreetti; John/Jane Doe                 :
(1-99),                                        :
                          Respondents          :

# **O R D E R**

**NOW**, December 6, 2021, as set forth in the foregoing opinion, the Motion for Summary Relief filed by Brentt Sherwood is **DENIED**, the Motions for Judgment on the Pleadings filed by Respondents are **GRANTED IN PART** and **DENIED IN PART**. The claims in the Amended Petition for Review in this matter, except for the claims regarding the $500 in restitution in Docket 633 and the $200 cost pursuant to Section 7508.1(b) of the Crimes Code at issue in Docket 126, are **DISMISSED**.

_____
**RENÉE COHN JUBELIRER,** Judge