**Mark Newton SPOTZ, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Dennis Lebo (Clerk of Court), Jeffrey A. Beard, Ph.D (Secretary of Corrections), Louis Folino (Superintendent), Jean W. Scott (Business Manager), Leslie Wynn (Inmate Accounting Officer), Gina Perry (Inmate Records Supervisor), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2008.

Decided May 6, 2009.

Mark Newton Spotz, petitioner, pro se.

Timothy I. Mark, Deputy Chief Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for Corrections Respondents.

Christopher E. Fisher, Harrisburg, for respondent, Dennis Lebo.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Before this Court, in our original jurisdiction, are the Preliminary Objections (Objections) of Dennis Lebo, Clerk of Court for the Court of Common Pleas of Cumberland County (hereinafter, Lebo), and the combined Preliminary Objections of Jeffrey A. Beard, Ph.D (as Secretary of the Pennsylvania Department of Corrections), Louis Folino (as Superintendent of SCI–Greene), Jean W. Scott (as Business Manager of SCI Greene), Leslie Wynn (as Inmate Accounting Officer of SCI–Greene), and Gina Perry (as Inmate Records Supervisor of SCI–Greene) (hereinafter, collectively, the Corrections Respondents).[1] The two sets of Objections *sub judice* were filed against the *pro se* Petition for Review of Governmental Action (the Petition) of Mark Newton Spotz (Spotz), an inmate at SCI–Greene.

Spotz is currently incarcerated at SCI–Greene where he is serving a sentence of death imposed by the Court of Common Pleas of Cumberland County (Trial Court) by order dated May 17, 1996, with the sentence formally imposed after post-verdict motions by order dated June 17, 1996.[2] The Trial Court's sentencing order did not include any express language assessing any fines, costs, or reimbursements imposed onto Spotz.

On November 1, 2000, the Department of Corrections (Department) began deducting 20% of all incoming money from Spotz's inmate account,[3] which money was ultimately remitted to the office of Lebo as Clerk of Cumberland County Courts, costs and fines division. The Department alleged costs[4] in the amount of $14,373.35 from Spotz's capital prosecution, and entered its deductions as entries within the Department's Inmate Account System under what is commonly, and hereinafter, referred to as Act 84, Act of June 18, 1998, P.L. 640, which amended Section 9728 of the Sentencing Code, 42 Pa.C.S. § 9728.[5]

On December 4, 2002, Spotz filed in the Trial Court a Petition for Habeas Corpus Relief (Habeas Corpus Petition) seeking post-conviction relief. The Habeas Corpus

---

1. The Corrections Respondents, together with Lebo, shall hereinafter be referred to collectively as the Respondents.

2. The Pennsylvania Supreme Court affirmed Spotz's judgment of sentence by order dated October 20, 2000. *See Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000). Thereafter, the United States Supreme Court denied Spotz's Petition for Writ of Certiorari. *See Spotz v. Pennsylvania*, 534 U.S. 1104, 122 S.Ct. 902, 151 L.Ed.2d 871 (2002).

3. *See* Act 84 Log entries, Petition at Ex. K.

4. The Department did not allege any fines or restitution costs.

5. We note that while the original sentencing order is this matter was entered on June 17, 1996, Act 84 did not become effective until 1998. However, Act 84 has been held to be applicable to convictions entered, and costs ordered, prior to the date of its enactment. *See Sweatt v. Department of Corrections*, 769 A.2d 574 (Pa.Cmwlth.2001) (Act 84, authorizing Department to make monetary deductions from inmate account for the purpose of collecting restitution or court-ordered obligations was not penal in nature, and thus could be applied retroactively to defendant convicted before Act's effective date).

Petition was ultimately held in abeyance pending the resolution of other criminal charges in Clearfield County, which charges were used in aggravation in the criminal case underlying the instant action.

On January 26, 2004, Spotz filed in the Trial Court a Petition to Direct the Department of Corrections to Cease Deducting Funds (Petition to Cease Deductions) from his account, additionally seeking the return of the funds that had already been deducted. The Trial Court did not hold a hearing on Spotz's Petition to Cease Deductions, and dismissed it by order dated March 2, 2004, which reads in its entirety:

> AND NOW, this 2nd day of March, 2004, the within petition IS DISMISSED WITHOUT A HEARING.[1]

[1] (1)The assessment of costs is automatic following a conviction, (2) the within petition is not a direct appeal or a post-conviction petition, (3) the assessment of costs has not exposed petitioner to initial confinement, additional confinement or increased conditions of supervision, and (4) this court has no jurisdiction over the Department of Corrections. [*George v. Beard,* 824 A.2d 393 (Pa.Cmwlth. 2003); *Commonwealth v. Fleming,* 804 A.2d 669 (Pa.Super.2002).]

*See* Petition at Ex. F.

Subsequently, on August 23, 2004, Lebo's office generated a Court Commitment Order, also known as Form DC–300B, indicating costs assessed against Spotz in the amount of $12,179.80, as well as $30.00 assessed for the Crime Victim's Compensation Fund—Victim/Witness Services Fund. This Form DC–300B was then forwarded to the Department.

On January 16, 2007, Spotz filed in the Trial Court a Motion to Amend his pending Habeas Corpus Petition, alleging in material part that the Department's deductions violated his constitutional rights, and seeking both cessation of the deductions, and the return of previously deducted monies. By order dated April 20, 2007, the Trial Court denied Spotz's Petition to Amend his Habeas Corpus Petition.

Beginning in August, 2007, Spotz filed numerous Official Inmate Requests to Staff Members, seeking documentation of, and explanation for, the deductions at issue. Spotz also initiated an Official Inmate Grievance asserting, generally, that he had never been ordered to pay the costs at issue, and that the Department's deductions were contrary to law. Spotz's Grievance was denied. Spotz pursued all available appeals within the grievance system, during which pursuit he corresponded again with Lebo regarding his sentencing. Lebo replied, *inter alia,* by correspondence dated September 11, 2007, emphasizing the Trial Court's footnote stating that "the assessment of costs are automatic following a conviction" within its March 2, 2004, order as implied authority for the deductions. By decision dated December 14, 2007, the Chief Grievance Officer denied Spotz's final appeal in the administrative process.

On January 7, 2008, Spotz filed the instant Petition at issue in this Court's original jurisdiction. Spotz's Petition seeks, *inter alia,* the return of funds alleged to have been illegally seized and/or deducted from Spotz's personal account during his imprisonment. In his Petition, Spotz alleges, in relevant part, that the above-captioned Respondents deprived Spotz of 20% of the incoming monies to his prisoner account in the absence of any court-ordered authority to do so in an attempt to recover court costs from Spotz. Additionally, Spotz challenges the validity of Act 84.

Most generally stated, Act 84 expressly authorizes deductions from an inmate's account to satisfy orders for costs, fines, and/or restitution, and directs the Department to develop guidelines to carry out its responsibilities, i.e., determining the

amount of the installment payments to be made towards an inmate's unpaid costs, fines and restitution. The crux of Spotz's Petition avers that the Trial Court's June 17, 1996, sentencing order did not expressly order any payment of costs, and that absent such an express order, the Department and Lebo were without authority to *sua sponte* initiate, collect, and remit the deductions effected upon Spotz's inmate account. As relief, Spotz seeks: preliminary and permanent injunctions against the Respondents preventing any further deductions; an order staying any further deduction pending the outcome of the case before us; declaratory judgment; summary relief; the return of all monies previously deducted; amendment to both Act 84 and the regulations enacted thereunder; an order mandating that both the Department and Lebo abide by Act 84 and its resulting regulations, and; reimbursement for costs associated with the instant Petition.

Subsequent to the filing of Spotz's Petition, Lebo and the Corrections Respondents filed separate Preliminary Objections thereto, to which Spotz filed responses in opposition. Subsequently, the Objections were briefed by the parties.[6]

■ In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Marrero by Tabales v. Commonwealth of Pennsylvania*, 709 A.2d 956 (Pa.Cmwlth.1998).[7] In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

We first address Spotz's filing with this Court, following the submission, answering, and briefing of the Objections *sub judice*, of an Important Notice To The Court (hereinafter, Notice), filed by Spotz on November 6, 2008. Therein, Spotz asserts that certain recent developments in this matter are relevant to this Court's disposition thereof. In his Notice, Spotz asserts that Lebo's attorney in this matter has communicated to Spotz that Lebo has ceased making any Act 84 deductions from Spotz's inmate account and has refunded the sum of $96.00. Spotz requests that this Court view these recent actions by Lebo as "admissions of culpability" as to the illegality of the deductions at issue, and as to the Respondents' collective responsibility to reimburse Spotz for the funds at issue as requested in his Petition. Neither Lebo, nor the Corrections Respondents, responded in any manner to Spotz's Notice. We decline to accept Spotz's invitation to interpret the cessation of the deductions at issue as an implicit admission of error or culpability herein.

■ However, inasmuch as Spotz himself brings to this Court's attention Lebo's ceasing of any Act 84 deductions in the present and moving forward, and affirms and accepts that cessation, Spotz is no longer entitled to the injunctive relief sought to prevent further deductions from his account, or to a stay of those deductions during the pendency of this action. Given Spotz's acknowledgement and acceptance of the cessation of deductions, we grant the Corrections Respondents' Objection to Spotz's request for injunctive relief.[8]

---

6. By leave of this Court, Spotz has filed a combined brief in opposition to both Lebo's and the Corrections Respondents' Objections.

7. *Affirmed*, 559 Pa. 14, 739 A.2d 110 (1999).

8. Spotz filed a second Important Notice to the Court on February 19, 2009. Therein, Spotz presents additional evidence supporting his claims that no costs were ordered by the sentencing Court in this matter, and that

■ We next address the Corrections Respondents', and Lebo's, first advanced Objection.[9] The Respondents advance a demurrer to Spotz's attacks upon Act 84, and the regulations promulgated thereunder, on the general basis that the precedents of our Courts require a dismissal of Spotz's Petition.

The Respondents cite to Act 84's direct authorization of the Department to collect funds:

Collection of restitution, reparation, fees, costs, fines and penalties

\* \* \*

(b) Procedure.—

\* \* \*

(3) The county clerk of courts shall, upon sentencing, pretrial disposition or other order, transmit to the ... Department of Corrections ... copies of all orders for restitution and amendments or alterations thereto, reparation, fees, costs, fines and penalties.

\* \* \*

(5) The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. Any amount deducted shall be transmitted by the Department of Corrections or the county correctional facility to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

Section 9728 of the Sentencing Code, 42 Pa.C.S. § 9728(b). Respondents, citing to *Boyd v. Department of Corrections*, 831 A.2d 779, 783 (Pa.Cmwlth.2003),[10] further emphasize:

42 Pa.C.S. § 9728(b)(5) specifically provides that "[the] Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph." In response to that directive, the Department developed policy DC–ADM 005, which provides, in relevant part, "the business office will deduct from an inmate's account monthly payments of 20% of the preceding month's income provided the account balance exceeds $10.00."

Continuing their citation to our opinion in *Boyd*, Respondents also assert that this Court has indicated that Form DC–300B can be an appropriate document upon which the Department may rely to determine the amount of financial obligations imposed by a sentencing court. *See Boyd*, 831 A.2d at 783, n. 6 (where inmate does not dispute that sentencing court imposed fines, costs, and restitution, but argues

---

Lebo's actions exceeded the scope of his authority as a Clerk of Courts. The matters presented in Spotz's second Notice are of no moment to our disposition of the Objections before us, and thusly, need not be further addressed at this point in the instant proceedings.

9. In his brief, Spotz renews his two prior motions to this Court that we find Lebo in default in this matter for untimely compliance in filing a response to Spotz's Petition. By order of this Court dated March 24, 2008, we dismissed Spotz's default motion, and granted Lebo thirty days within which to respond. As Lebo timely met that deadline, we will not revisit our previous disposition of Spotz's motion on this issue.

10. *Affirmed*, 584 Pa. 540, 886 A.2d 222 (2005).

that Department may not deduct funds absent an express order authorizing the act of deduction, Form DC–300B can be relied upon by Department even where Form was completed on Court's behalf by clerk but was not signed by sentencing Judge). Respondents argue, under the above citations, that a Form DC–300B is the typical source document used to notify the Department of the total amount of obligation due, since the information contained therein and furnished by a Clerk of Courts, such as Lebo, is both reliable and accurate.

*Boyd*, however, is inapplicable to the instant matter. In *Boyd*, the inmate did not dispute that the sentencing court therein had imposed upon him certain fines, costs, and restitution. The relevant dispositive issue in that matter was whether, given that undisputed imposition of fines, costs, and restitution, the Department could rely upon the Court Commitment Order in effecting the deductions. We held:

> Because, in this case, Boyd does not dispute that the sentencing court imposed fines, costs and restitution upon him, but instead, only argues that the Department may not deduct funds for such purposes without a court order authorizing the "act" of deducting those funds, his argument must fail.[6]

**11.** Similarly, Respondents' arguments regarding the retroactive application of Act 84, the definition of "income" thereunder, potential separation of powers violations, and due process implications in relation to the lack of any "ability to pay" proceedings in this matter, are wholly irrelevant. No such issues have been raised by Spotz herein, and no such issues are implicated by Spotz's Petition, or by Respondents' Objections.

**12.** This Court ordered the parties to brief the applicability of *LeBar* to the instant matter. Spotz now attempts to argue that Respon-

[6] Even though the Court Commitment order, Form DC–300B, was completed on the court's behalf by the clerk and was not signed by the sentencing judge, the Department did not err in relying on that form which indicated that Boyd had been ordered to pay $5,000.00 in fines, $335.20 in costs and $3,240.00 in restitution by the sentencing court. [*See Abraham v. Department of Corrections*, 150 Pa.Cmwlth. 81, 615 A.2d 814 (1992), *affirmed*, 535 Pa. 122, 634 A.2d 214 (1993), *overruled on other grounds by Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996).]

*Boyd*, 831 A.2d at 782–783. The fact that the inmate in *Boyd* did not dispute the sentencing court's imposition of the fines, costs, and restitution in that matter distinguishes it from the matter *sub judice*, in which Spotz asserts that no such order has been made by the sentencing court in this case. As such, *Boyd* is neither controlling of, nor persuasive to, the facts before us presently.[11]

■ The generalized essence of Respondents' demurrer arguments centers around the assertion that Spotz has failed to state a claim upon which relief can be granted, in that Act 84 and its related regulations grant the Department the authority to make the deductions at issue, especially given the existence of Form DC–300B as forwarded to the Department by Lebo. We disagree, based on our review of Superior Courts opinion in *Commonwealth v. LeBar*, 860 A.2d 1105 (Pa.Super.2004), which we find to be both instructive, and persuasive, to the matter at hand.[12]

dents, having failed to raise the inapplicability of *LeBar* to this matter in their Objections, have waived any argument that it does not apply to, or control, the matter *sub judice*. Notwithstanding the fact that Superior Court precedents are not binding upon this Court, we note that Spotz himself raised the applicability of *LeBar* in his Petition. Spotz apparently misapprehends the nature of waiver in this context: Respondents have not waived their right to argue the applicability, or persuasive value, of this precedent to this matter by failing to specifically so claim in their

In *LeBar*, an inmate sought review of a decision of a sentencing court that had denied the inmate's motion to compel the county clerk of court, and the Department, to return monies deducted in violation of Section 9728 of the Sentencing Code from the inmate's monthly income to cover court costs. In its analysis of Act 84, Superior Court first addressed the issue of the assessment of discretionary, court-ordered monies:

> [W]e need look no further than the language of Act 84, which provides the "procedural mechanism for the collection of court costs and fines." [*Harding v. Stickman*, 823 A.2d 1110, 1112 (Pa. Cmwlth.2003).] The Act vests authority in DOC to collect on court-assessed costs, fines, and restitution. [*See* ] 42 Pa.C.S. § 9728(b)(5). **What, on its plain language, Act 84 most assuredly does *not* do, is vest in the clerks of courts of the counties of this Commonwealth the fundamentally judicial authority to assess costs in the first instance against parties where costs have not been explicitly provided for in that party's sentencing order.** Indeed, the section permitting DOC to collect court-ordered costs could not be more clear on this point: "The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution *or any other court-ordered obligation*." 42 Pa.C.S. § 9728(b)(5) (emphasis added); [*see Boyd v. Pennsylvania Dep't of Corrs.*, 831 A.2d 779, 783 (Pa.Cmwlth.2003) ] "( [T]he Department [of Corrections] is authorized to make monetary deductions from an inmate's personal account for the purposes of collecting restitution, as well as fines and costs, *which were imposed by the sentencing court* .... ");  [*see also Commonwealth v. Larsen]*, 452 Pa.Super. 508, 682 A.2d 783, 794–95 (1996) (discussing generally the ways in which a *court order* sentencing a party to costs may be followed within thirty days by a *court order* setting such costs, which in turn would, *by court order*, "give the sentencing cost substance and enforcement perimeters to allow the collection agent for the court to act timely").
>
> ... **[T]he only money DOC might collect from LeBar's personal inmate account under § 9728 must be a "court-ordered obligation"-something strikingly absent ... from the original sentencing order** ...

*LeBar*, 860 A.2d at 1109–1110 (non-italicized bold emphasis added).

However, continuing its analysis, Superior Court differentiated between costs which the sentencing court has discretion to expressly order paid, or to waive, and statutorily mandated, or non-waivable, costs. Superior Court stated further:

> This does not end our inquiry, however; the Commonwealth has directed our attention to a statute the trial court might have referred to when it summarily described court costs as "statutory in nature." Specifically, the Commonwealth asserts that 18 P.S. § 11.1101 authorizes all of the costs DOC collected from LeBar in this case. Relevantly, that section provides as follows:
>
> § 11.1101.   Costs
>
> (a) Imposition.

respective Objections. We denied Spotz's prior objection to the Respondents' address of *LeBar*, and subsequently expressly ordered the parties to address this precedent. Respondents have not waived any right to argue the applicability of potentially persuasive case law, and we will not revisit our prior dismissal of Spotz's motion on this issue.

(1) A person who pleads guilty or nolo contendere or who is convicted of a crime shall, in addition to costs imposed under 42 Pa.C.S. § 3571(c) (relating to Commonwealth portion of fines, etc.), pay costs of at least $60 and may be sentenced to pay additional costs in an amount up to the statutory maximum monetary penalty for the offense committed.

\*    \*    \*    \*    \*    \*

(c) Payment. This cost shall be imposed notwithstanding any statutory provision to the contrary.

\*    \*    \*    \*    \*    \*

(e) Court order. No court order shall be necessary in order for the defendant to incur liability for costs under this section. Costs under this section must be paid in order for the defendant to be eligible for probation, parole or accelerated rehabilitative disposition.

18 P.S. § 11.1101. Our research discloses no cases interpreting this statutory provision, thus we must rely on the statute's plain language to determine whether and how it applies to LeBar's case. *See* 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage....").

The Commonwealth would have us rule that § 11.1101(a) validates all of the fines charged to LeBar, and that § 11.1101(e) authorizes the method of collection implemented in this case notwithstanding the lack of a court order imposing those costs. We disagree. Section 11.1101 unequivocally imposes a $60 fee on LeBar, which we must uphold. To that extent, then, the costs imposed were indeed "statutory in nature," and to that extent only we affirm

the trial court's order sustaining DOC's collection of fees from LeBar. With regard to the balance of monies collected from LeBar, however, we note that § 11.1101(a)(1) contains language susceptible to the same analysis we applied to 42 Pa.C.S. § 9728. As in that section, § 11.1101 provides that a person who pleads guilty "shall ... pay costs of at least $60 *and may be sentenced to pay additional costs in an amount up to the statutory maximum monetary penalty for the offense committed.*" 18 P.S. § 11.1101(a)(1) (emphasis added). As in § 9728, the statute recognizes that the sentencing court *may* in its discretion impose costs up to the relevant statutory maximum; beyond the mandatory $60 assessment, however, § 11.1101 is not self-executing but rather requires a "sentence" in the same way that § 9728 requires a court order. Based on our analysis above, and our brief discussion to follow, we find that the trial court neither sentenced nor validly ordered imposition of any costs, fees, or restitution. Consequently LeBar is responsible only for the mandatory $60 assessment provided in 18 P.S. § 11.1101.

\* \* \*

Thus, we have no choice but to enforce the original sentencing order, which imposed neither costs nor fines on LeBar. Of course, consistent with the above discussion, we find no impropriety in the collection of $60 from LeBar; as to the difference between this amount and the $466 actually collected, however, we find that DOC's collection was erroneous and must be remedied.

*LeBar,* 860 A.2d at 1110–1112.

The crux of *LeBar* was Superior Court's distinction between the two categories of costs, namely, those that are waivable, and

those that are not, in relation to which of those categories require an express court order for later deduction under Act 84's plain language. Although Respondents' acknowledge this distinction, they emphasize *LeBar's* holding that statutorily mandated, non-waivable costs can be collected from an inmate even where such payment and concomitant collection has not been specifically ordered by a court. Contrarily, however, Respondents admit that in the instant matter, only some of the costs deducted from Spotz's account were statutorily mandated, non-waivable costs.[13] Despite the logical implied conclusion that follows Respondents' assertion, namely, the existence of other non-mandated, waivable costs, Respondents' argue that *LeBar* is inapplicable and/or not persuasive. We disagree.

■ *LeBar* clearly holds that Act 84 authorizes only the deduction of court-ordered, waivable costs, which are deductible only in the presence of a court order so specifying; however, non-waivable, statutorily mandated costs are deductible absent any express court order. We find Superior Court's analysis and reasoning on this issue to be astute, and persuasive, and thusly, adopt it. As such, we deny Respondents' Preliminary Objections in the nature of demurrer.

■ In addition to joining the Corrections Respondents' demurrer Objection, as articulated above, Lebo separately provides two additional grounds in support of his own demurrer. First, Lebo asserts—correctly—that his official clerk position is purely ministerial,[14] and that he was thusly

merely following the order of the Trial Court dated March 2, 2004, in completing and forwarding the Form DC–300B to the Department, which Form initiated the deductions at issue. We find Lebo's argument on this point unavailing to his demurrer Objection, in that nothing in the 2004 order can be read to clearly and expressly authorize the deduction of all of the funds placed at issue by Spotz herein. We find this argument particularly unavailing given Lebo's own contrary concession, within his brief to this Court, that there existed no order expressly imposing costs upon Spotz. *See* Lebo brief at 7.

■ Secondly, Lebo argues that Spotz's instant challenge is properly brought in the Trial Court as the sentencing court of record in this matter. We disagree. Spotz's Petition clearly does not attack the June 17, 1996, sentencing order underlying this matter; the nature of his challenge, in fact, relies upon the express wording of that sentencing order. Spotz is, in the instant matter, clearly and unequivocally challenging only the governmental action of Lebo and the Correction Respondents in the wake of the sentencing order, which matter the Trial Court has no jurisdiction over under the instant facts. *See Commonwealth v. Parella*, 834 A.2d 1253 (Pa. Cmwlth.2003) (Court of Common Pleas lacked subject matter jurisdiction over inmate's action to stop Department from making deductions from his prison account pursuant to Act 84; inmate did not challenge underlying sentence imposing costs or restitution, and Commonwealth Court had exclusive original jurisdiction over petitions for review of governmental action).

---

13. We note that Spotz admits that a portion of the costs for which deductions have been made are indeed statutorily mandated, non-waivable costs for which Spotz concedes no court order is required. Spotz is not seeking reimbursement for these deductions.

14. Spotz, in his Petition, expressly argues that Lebo has *exceeded* his purely ministerial authority in this matter, which argument forms part of the foundation of Spotz's central claim in this matter. As such, for purposes of the Objections at issue, Lebo's assertion on this point is of no moment.

Accordingly we deny Lebo's additional Preliminary Objection in the nature of demurrer.

Next we address the Corrections Respondents' Objection that Spotz is not entitled to an order directing the Department to refund or reimburse the deductions previously made, which deductions the Department avers have been remitted to Cumberland County based upon the representations made in Form DC–300B as provided to the Department by Lebo. In support of this Objection, the Corrections Respondents argue that Spotz's remedy in this case, if any exists, lies solely against Lebo as the Clerk of Courts, if Lebo is in fact in possession of any collected funds, or if some erroneously listed amounts remain owed by Spotz. The Corrections Respondents additionally argue that any ordered refund or reimbursement would not be an equitable remedy herein, but would constitute a punitive measure against the Department, in that, given the Department's remittance of the funds at issue, the Department would be essentially paying Spotz's costs as a practical matter. The Corrections Respondents further argue that Spotz, if granted reimbursement or refund, could potentially be unjustly enriched if the Department was ordered to reimburse Spotz, and Lebo was ordered to credit that same reimbursement amount to Spotz's account. We find the Corrections Respondents' arguments on this point to be unduly prospective and speculative, and without merit.

In *LeBar*, our Superior Court directed the trial court therein to "see to the restitution" to the inmate's account of the monies "improperly collected and ostensibly forwarded" to the trial court in that matter. *LeBar*, 860 A.2d at 1112. As such, and given our adoption of Superior Court's reasoning and analysis in *LeBar*, Spotz may, if successful in advancing his Petition, be entitled to reimbursement and/or refund of the monies at issue herein. Any punitive or unjust enrichment concerns articulated by the Corrections Respondents can be addressed in any potential proceedings on that reimbursement/refund, and are insufficient to support the Corrections Respondents' Objection on that basis.

Accordingly, the Corrections Respondents', and Lebo's, Preliminary Objections are granted in respect to Spotz's requested injunctive relief, and denied in all other respects.[15]

### ORDER

AND NOW, this 6th day of May, 2009, the Preliminary Objections of the above-named Respondents are granted in part, and denied in part, in accordance with the reasoning in the foregoing opinion. Respondents are directed to file an answer in this matter within thirty (30) days of the date of this order.

---

**15.** Two ancillary matters, advanced by Spotz in his responses to the Respondents' Objections and brief in support thereof, remain. First, Spotz renews his previously denied leave to amend his Petition to add an additional count of fraud and collusion, and to name an additional respondent. As noted herein, we will not revisit motions that we have previously disposed of. Secondly, Spotz attempts to present a motion, within his brief, for entry of judgment of summary relief. We emphasize to Spotz, in the strongest possible terms, that the rules of procedure before this Court in our original jurisdiction, including rules for proper motion practice, do not allow for the presentation of the various motions presented by Spotz herein within the context of addressing Preliminary Objections. *See generally*, Pennsylvania Rule of Appellate Procedure 106. As such, we will not address the motions Spotz attempts to present in his responses to the Respondents' Objections.