IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Beavers Jr.,                        :
                    Petitioner             :
                                           :
          v.                               :     No. 486 M.D. 2020
                                           :     Submitted: February 26, 2021
The Pennsylvania Department of             :
Corrections,                               :
                    Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: December 9, 2021


          Before the Court is the Department of Corrections' preliminary
objection in the nature of a demurrer to Robert Beavers Jr.'s *pro se* petition for
review filed in the Court's original jurisdiction. Beavers, an inmate at the State
Correctional Institution at Houtzdale, argues that the Department's increase in the
rate of the deduction from his inmate account to pay court-ordered fines and costs
violated his right to due process. The Department has moved to dismiss Beavers'
petition because Act 84[1] required the deduction rate increase.

          In his petition for review, Beavers alleges that on July 24, 2020, he
received a monetary gift from a friend. Petition for Review, ¶1. In the past, when
he received a monetary gift, the Department would deduct 20% and apply it towards

---

[1] Act of June 18, 1998, P.L. 640, No. 84 (Act 84). Act 84 amended Section 9728 of the Sentencing
Code, 42 Pa. C.S. §9728, to add subsection (b)(5), which authorizes the Department to make
deductions from inmate accounts to pay court-ordered obligations imposed by the sentencing
court.

his court-ordered sentencing fine. *Id.* However, this time, he noticed that 25% was deducted. *Id.* He then reviewed his inmate account and learned that for "several months" the Department had been deducting 25% of the monies deposited into his inmate account. *Id.* Beavers alleges that he "never received notice or a hearing" prior to the Department's increase in the rate of the deduction. *Id.*, ¶3.

In the petition, Beavers avers that he filed a grievance challenging the 5% increase in the deduction. *Id.*, ¶2. The grievance was denied as untimely. *Id.*, Exhibit B. The Department explained that "[t]he increase from 20% to 25% occurred well over 15 working days ago and, in fact, in checking [Beavers'] transaction [sheet, his] money, inclusive of gifts, has been subject to the 25% deduction for months." *Id.*

Based on these allegations, Beavers asserts a violation of due process. The petition states that "inmates retain a property interest in money received from outside sources and money [earned;] thus, inmates are entitled to due process before they can be deprived of these monies." Petition for Review, ¶6. Beavers contends that the sentencing court considered his ability to pay when it set the amount of his fines and costs that, at the time, were subject to a 20% Act 84 deduction. *Id.*, ¶5. The petition alleges that had the sentencing court known the deduction could be increased to 25%, the outcome could have been different. *Id.*

Beavers requests this Court to terminate the 5% increase in deductions until the Department affords him "a proper hearing." *Id.*, ¶8. Beavers also requests the Department to return the amounts deducted from his account in excess of 20%. *Id.*, ¶9.

The Department filed a preliminary objection in the nature of a demurrer to the petition. The Department explains that Beavers had a hearing on his

2

ability to pay the court-ordered fines and costs at the time of his sentencing. Additionally, the Department has already provided Beavers an Act 84 hearing on the deductions from his inmate account to pay his court-imposed fines and costs. This hearing established the accuracy of the court-ordered fines and costs and that deductions are made from appropriate funds in his inmate account. Social Security benefits, for example, are exempt from Act 84 deductions. The Department argues that the 25% rate of deduction is mandated by statute and that a change in the applicable statute does not entitle Beavers to another Act 84 hearing.

Beavers responds that when the sentencing court imposed fines and costs, the Department's standard deduction rate was 20%, and he did not challenge the court-imposed fines and costs. However, the 25% deduction has created a significant hardship because hygiene products have nearly doubled in price since he was first incarcerated. Additionally, he must purchase food from the commissary because the Department has decreased the size of food portions available to inmates.

In ruling on preliminary objections in the nature of a demurrer, the Court "must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts." *Richardson v. Beard*, 942 A.2d 911, 913 (Pa. Cmwlth. 2008). The Court "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Freemore v. Department of Corrections*, 231 A.3d 33, 37 (Pa. Cmwlth. 2020) (quoting *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010)). "The question presented by a demurrer is whether, on the facts alleged, the law says with certainty that no recovery is possible." *Bullock v. Horn*, 720 A.2d 1079, 1081 n.5 (Pa. Cmwlth. 1998). This Court has explained:

> A preliminary objection in the nature of a demurrer admits every
> well-pleaded fact in the [petition for review in the nature of a]

complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Freemore*, 231 A.3d at 37 (quoting *Torres*, 997 A.2d at 1245). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also any documents or exhibits attached to it." *Allen v. Department of Corrections*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). Against these principles, we consider the Department's demurrer to Beavers' petition for review.

The Sentencing Code authorizes the court to make the defendant pay a fine in "addition to another sentence."[2] 42 Pa. C.S. §9726. However, the defendant must "be able to pay the fine." 42 Pa. C.S. §9726(c)(1). Act 84 has tasked the Department with making "monetary deductions from inmate personal accounts for

---

[2] Section 9726 of the Sentencing Code provides, in pertinent part:

\* \* \*

(b) Fine as additional sentence.--The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when:

(1) the defendant has derived a pecuniary gain from the crime; or

(2) the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant.

(c) Exception.--The court shall not sentence a defendant to pay a fine unless it appears of record that:

(1) the defendant is or will be able to pay the fine; and

(2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

(d) Financial resources.--In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa. C.S. §9726(b)-(d).

the purpose of collecting restitution and other court-ordered obligations or costs …." 42 Pa. C.S. §9728(b)(5). As this Court has explained, "Section 9728(b)(5) permits the Department to collect fines, costs, and restitution from inmate prison accounts and forward the fund[s] to the sentencing county." *Johnson v. Wetzel* (Pa. Cmwlth., No. 497 M.D. 2018, filed June 3, 2019) (unreported), slip op. at 2 n.1.[3]

When enacted, Act 84 committed the rate of the deduction to the discretion of the Department. Pursuant to Section 9728(b)(5), the Department promulgated Policy Statement DC-ADM 005, which set a deduction "from an inmate's account [of] monthly payments of 20% of the preceding month's income provided the account balance exceeds $10.00[.]" *Spotz v. Commonwealth*, 972 A.2d 125, 130 (Pa. Cmwlth. 2009) (citing COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, POLICY No. DC-ADM 005: COLLECTION OF INMATE DEBTS at 2-1 (2007)). The Department's standard deduction of 20% was applied to all inmate accounts.

In 2019, the legislature amended Act 84 to set a minimum deduction rate of 25%. Section 9728(b)(5) states as follows:

(5) Deductions shall be as follows:

(i) *The Department of Corrections shall make monetary deductions of at least 25% of deposits made to inmate wages and personal accounts* for the purpose of collecting restitution, costs imposed under section 9721(c.1), filing fees to be collected under section 6602(c) (relating to prisoner filing fees) and any other court-ordered obligation.

---

[3] Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a), provides that an unreported panel decision of this Court issued after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

42 Pa. C.S. §9728(b)(5)(i) (emphasis added). Thus, the statute now requires the Department to make deductions at the minimum rate of 25% from deposits made to an inmate's account to pay the inmate's court-ordered fines and costs.

It is well established that inmates retain a "property interest" in the money in their accounts and "any dispossession of that interest may only occur in conjunction with 'due process of law.'" *Bundy v. Wetzel*, 184 A.3d 551, 556 (Pa. 2018) (*Bundy I*) (citing U.S. CONST. amend. XIV, §1). To comply with due process, the Department must:

> (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as the Department's policy concerning the rate at which funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account.

*Bundy I*, 184 A.3d at 558-59. The Supreme Court has explained that this pre-deduction notice and hearing "will help protect against errors in the Department's application of its Act 84 deduction policy without significantly impeding its ability to carry out essential functions." *Bundy I*, 184 A.3d at 559. Under its policy, the Department provides the inmate with a Notification of Deductions Memo[4] and copies of the official court documents upon which it relied.

---

[4] The Memo informs the inmate of the amounts of fines, costs, restitution, and crime victim compensation/victim's services fees owed. COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, POLICY No. DC-ADM 005: COLLECTION OF INMATE DEBTS, Attachment 3A (2020), *available at*: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/005%20Collection%20of%20Inmate%20Debts.pdf (last visited December 8, 2021). It explains that the Department will begin making deductions from the inmate's account to satisfy the financial obligations in accordance with Act 84. *Id*. Finally, the Memo explains to the inmate how the deductions will be made and advises the inmate how to challenge the accuracy of the documentation establishing the amounts owed. *Id*.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, POLICY No. DC-ADM 005: COLLECTION OF INMATE DEBTS, at 3-2 to 3-3 (2020), *available at*: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/005%20Colle ction%20of%20Inmate%20Debts.pdf (last visited December 8, 2021). The inmate has 15 days to challenge the deduction by filing a grievance and attaching relevant court documents, such as a court order, sentencing transcript, or other official court record to challenge any provision in the Notification of Deductions Memo. *Id.*

Beavers argues that the Department should have provided him with a new Notification of Deductions Memo and hearing prior to raising the deduction rate from 20% to 25%. We disagree.

First, inmates, like all citizens, are presumed to know the laws of this Commonwealth, including, in this case, the current language of Section 9728(b)(5). *In re Kearney*, 7 A.2d 159, 161 (Pa. Super. 1939) ("[I]gnorance of the law excuses no one, according to the ancient maxim, everyone being presumed to know the law[.]"); 31A CORPUS JURIS SECUNDUM EVIDENCE §221 (2021) (all persons must take notice of the public laws by which they are governed and are presumed to have such knowledge). Due process did not require the Department to notify Beavers of the amendment to Act 84.

Second, Beavers has had an Act 84 hearing. In *Bundy I*, the Pennsylvania Supreme Court directed that an inmate is entitled to a hearing before the first deduction from his inmate account. This includes a notice that sets forth the total amount of his financial liability; the Department's policy on the rate at which funds will be deducted from his account; and the accounts subject to deduction. *See Bundy I*, 184 A.3d at 557 (citing *Montanez v. Secretary, Pennsylvania Department of Corrections*, 773 F.3d 472, 486 (3d Cir. 2014)). The

purpose of this notice is "to protect against the possibility of error in the application of the [Department's] Policy, such as mistakes in reporting of an inmate's total liability or to ensure that deductions [were] not made from funds that are exempt." *Montanez*, 773 F.3d at 486.[5]

Beavers' petition is based solely on the increase in the rate of the deduction. Because the rate of the deduction was set by the legislature, the concerns recognized by the Third Circuit in *Montanez* and our Supreme Court in *Bundy I* and its progeny are not present. Further, the notice prescribed in *Bundy I* does not include notice of a change in Act 84.

There are additional reasons why the change to the rate of deduction from Beavers' account did not trigger another due process hearing. First, an increase in the rate of the deduction from 20% to 25% did not change the total amount of Beavers' court-ordered fines and costs or change the account from which the deductions are made. Second, because the statute requires the Department to deduct a minimum of 25%, it could not order a lesser deduction percentage even if it gave Beavers the hearing he seeks.[6] Third, the purpose of the pre-deduction hearing is to prevent erroneous deductions, *Bundy I*, 184 A.3d at 558, and Beavers has not alleged that there were any errors that a hearing might correct.

In sum, providing an inmate, including Beavers, with a hearing on the 25% statutory deduction rate would be redundant of the pre-deduction hearing that

---

[5] The dissent observes that the rate of deduction from an inmate account is an item to be considered in a *Bundy* hearing. Prior to 2019, the deduction rate was committed to the Department's discretion. With the 2019 amendment, the Department has no discretion to impose less than 25%. Accordingly, the deduction rate will be an item in a *Bundy* hearing only where the Department exercises discretion to impose a deduction rate higher than 25%.

[6] The deductions will reduce Beavers' debt and that advances "a legitimate Commonwealth interest, i.e., rehabilitation of the criminal and compensation to the victim of wrongful conduct." *Sweeney v. Lotz*, 787 A.2d 449, 452 (Pa. Cmwlth. 2001).

he already had. It would serve no purpose because the Department lacks the statutory authority to deduct less than 25% of deposits made to an inmate's account. *Small v. Horn*, 722 A.2d 664, 669 (Pa. 1998) ("Administrative agencies are creatures of the legislature, however, and they have only those powers that are conferred by statute."); *Department of Corrections v. Tate*, 133 A.3d 350, 356 (Pa. Cmwlth. 2016) (Department has a statutorily mandated duty to deduct funds pursuant to Act 84).

Beavers seems also to challenge the amount of the fines and costs imposed by the sentencing court. However, "the time to challenge the amount of a fine for inability to pay is at sentencing." *Stewart v. (Office of the Clerk) for Cumberland County Common Pleas Court* (Pa. Cmwlth., No. 361 M.D. 2018, filed August 23, 2019) (unreported), slip op. at 12; *see also Danysh v. Department of Corrections*, 845 A.2d 260, 264 (Pa. Cmwlth. 2004) (holding that inmate's ability to pay court-imposed obligation is reviewed by sentencing court). Beavers argues that had the sentencing court known that the amount of the deduction would increase by 5%, the "outcome could have been different." Petition for Review, ¶5. This speculation does not state a due process claim.

Lastly, in his brief, Beavers argues that he was entitled to an ability-to-pay hearing before the Department because the 25% deduction has imposed a financial burden on him. "An inmate is not entitled to a hearing on the issue of his ability to pay." *Leisure v. Department of Corrections* (Pa. Cmwlth., No. 417 M.D. 2018, filed December 6, 2018), *aff'd*, 214 A.3d 638 (Pa. 2019). *See also Buck v. Beard*, 879 A.2d 157, 161 (Pa. 2005) (due process does not require a judicial hearing regarding an inmate's ability to pay after his sentencing hearing); *Bundy v. Wetzel* (Pa. Cmwlth., No. 553 M.D. 2016, filed April 12, 2019) (unreported), slip op. at 18 (offender not entitled to an ability-to-pay hearing, or means to object to Act 84

9

deductions, whenever there is a material change in circumstances).[7]  "[W]hile in custody under sentence, an offender's sole avenues to challenge payment of financial aspects of sentence are direct appeal or postconviction proceedings."  *George*, 824 A.2d at 396.  These avenues "are adequate remedies at law for an offender in custody to challenge any aspect of the sentence."  *Id*.

For the above stated reasons, the petition for review does not state a claim.  Accordingly, the preliminary objection of the Department is sustained, and Beavers' petition for review is dismissed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[7] Although not required by statute, the Pennsylvania Supreme Court explained that "an ability-to-pay hearing" is conducted "where there has been a change in circumstances – such as a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations."  *Bundy I*, 184 A.3d at 559 (citing *Ingram v. Newman*, 830 A.2d 1099, 1103 (Pa. Cmwlth. 2003)).  The "change-in-circumstances" prerequisite, as developed by this Court in *George v. Beard*, 824 A.2d 393 (Pa. Cmwlth. 2003), and *Ingram*, "is grounded on the premise that a prisoner can obtain meaningful review of the financial aspects of his sentence through direct appeal or post-conviction proceedings."  *Bundy I*, 184 A.3d at 559.  If, however, an offender's failure to pay his court-ordered financial obligations causes him to be charged with contempt or a probation or parole violation and be exposed to confinement or increased conditions of supervision, a hearing is warranted.  *George*, 824 A.2d at 396.

Beavers does not allege that he is unable to pay his court-ordered financial obligations or that he is unable to seek review of the financial aspects of his sentence.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Beavers Jr.,     :
     Petitioner  :
           :
    v.      :  No. 486 M.D. 2020
           :
The Pennsylvania Department of :
Corrections,      :
     Respondent :

# **O R D E R**

AND NOW, this 9th day of December, 2021, the Pennsylvania Department of Corrections' preliminary objection is SUSTAINED, and Robert Beavers Jr.'s petition for review is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Robert Beavers Jr., : 
                Petitioner :
                 :
                 : No. 486 M.D. 2020
         v. :
                 : Submitted: February 26, 2021
The Pennsylvania Department of :
Corrections, :
                Respondent :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


**_OPINION NOT REPORTED_**

DISSENTING OPINION
BY JUDGE McCULLOUGH                   FILED: December 9, 2021


Because the Majority strays from the requirements of due process and our Supreme Court's clear and repeated application of that constitutional principle to Act 84,[1] I must respectfully dissent.

The crux of Robert Beavers Jr.'s claim is that, by increasing the rate at which the Department of Corrections (Department) deducts funds from his inmate account without affording him notice and an opportunity to be heard, the Department violated his right to due process. A review of our Supreme Court's recent pronouncements on this matter demonstrates that Beavers is correct.

---

[1] Act of June 18, 1998, P.L. 640, No. 84 (Act 84). Act 84 amended section 9728 of the Sentencing Code, 42 Pa.C.S. §9728, to add subsection (b)(5), authorizing the Department of Corrections (Department) to deduct funds from inmate accounts to pay court-ordered obligations.

In *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018), the Supreme Court, following a decision of the Third Circuit Court of Appeals in *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014), held that Act 84 deductions implicate the protections of due process. Notwithstanding their incarceration, because inmates retain a property interest in the money in their accounts, "any dispossession of that interest may only occur in conjunction with 'due process of law.'" *Bundy*, 184 A.3d at 556 (quoting U.S. CONST. amend. XIV, §1). Invoking the factors bearing upon the nature of the process due under *Mathews v. Eldridge*, 424 U.S. 319 (1976),[2] and in harmony with the Third Circuit's decision in *Montanez*, our Supreme Court concluded that Act 84 deductions warrant the provision of a pre-deprivation process prior to the first deduction. Specifically, to comply with due process,

> the Department must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as the Department's policy concerning the *rate at which funds will be deducted from his account* and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account.

*Bundy*, 184 A.3d at 558-59 (emphasis added).

Our Supreme Court addressed this matter again in *Johnson v. Wetzel*, 238 A.3d 1172 (Pa. 2020), and considered the availability of a remedy for inmates

---

[2] The *Mathews* factors are: "(1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state." *Bundy*, 184 A.3d at 557 (citing *Mathews*, 424 U.S. at 335).

who were subject to a first Act 84 deduction prior to the issuance of the decisions in *Bundy* and *Montanez*. With regard to the due process requirements attending such deductions, the *Johnson* Court reiterated the rule of *Bundy*:

> To review, prisoners are entitled, under the Due Process Clause of the Fourteenth Amendment, to notice of certain items and a reasonable opportunity to object before the first Act 84 deduction is made. These items include the Department's Act 84 deduction policy, the prisoner's total monetary obligation to the Commonwealth, *the rate at which funds will be deducted from his account*, and the funds which will be subject to withdrawals.

*Johnson*, 238 A.3d at 1182 (citing *Bundy*, 184 A.3d at 558) (emphasis added). The *Johnson* Court ultimately held that, for inmates who did not receive pre-deprivation process, the Department could satisfy the requirements of due process by providing post-deprivation process. In such a circumstance, due process requires that the Department, "in response to an administrative grievance which accurately recites that no *Bundy* process was afforded prior to the first Act 84 deduction," afford the inmate "notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84." *Id.* at 1183. "Any meritorious challenge along these lines would then implicate the substantive remedy of restoring the prisoner's wrongly-deducted funds to his or her account." *Id.*

The issue here derives from the General Assembly's decision in 2019 to amend section 9728(b)(5)(i) of the Judicial Code, 42 Pa.C.S. §9728(b)(5)(i), to set the rate of Act 84 deductions at 25%—an increase from the 20% that the Department previously deducted pursuant to its policies. *See* Act of December 18, 2019, P.L. 776. After this statutory amendment, the Department began deducting

25% of all monetary gifts deposited into Beavers' account.  Yet, the Department did not provide notice to Beavers of the increased rate of deduction, and it did not give him an opportunity to be heard on the matter.

It is plain that the Department's action runs afoul of *Bundy*.  Our Supreme Court has made it unmistakably clear that due process requires the provision of notice to the inmate, prior to the first deduction, of "the rate at which funds will be deducted from his account."  *Johnson*, 238 A.3d at 1182; *Bundy*, 184 A.3d at 558.  Even if one does not consider an increase in the rate to constitute a new "first" deduction for purposes of *Bundy*—which would be a reasonable conclusion— the ability to increase the rate of deduction without providing notice to the inmate would render this repeatedly stressed requirement absolutely meaningless.  Perhaps an increase of 5% does not seem especially significant.  But there is no limiting principle suggested here which would differentiate an increase to, *e.g.*, 50% or 75%.  Would the Court deem it acceptable for the Department to provide notice to an inmate of a 20% rate of deduction, then increase the rate to 90% without warning?  Given our Supreme Court's express and repeated command that the Department provide pre-deprivation notice to the inmate of "the rate at which funds will be deducted from his account," *Johnson*, 238 A.3d at 1182; *Bundy*, 184 A.3d at 558, I should think not.

The Majority offers several arguments in support of its conclusion to the contrary, none of which are convincing.  *See Beavers v. The Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 486 M.D. 2020, filed December 9, 2021) (*Beavers*), slip op. at 7-8.

First, the Majority invokes the ancient maxim that "ignorance of the law is no excuse," suggesting that Beavers must be presumed to be aware of any

PAM-4

change to any statute (notwithstanding his incarcerated status). *Id.* at 7. Thus, the Majority suggests, there was no need to inform Beavers of the increased rate of deductions from his account because he was already aware of the change. Of course, this rationale flips the due process burden on its head. It is the Department's obligation to *provide* notice of a property deprivation; it is not an inmate's burden to invite the Department to meet its *Bundy* obligations. *See Mathews*, 424 U.S. at 348-49 ("The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'") (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)); *see also Commonwealth v. Hamlett*, 234 A.3d 486, 515 (Pa. 2020) (Wecht, J., dissenting) ("[D]ue process jurisprudence has never placed the onus upon the individual subject to the deprivation to anticipate such deprivation and launch a prophylactic challenge thereto. To the contrary, it is inherent in the concept of 'notice' that the individual is to be *provided* with notice of adverse action; he is not expected to divine and preempt it.") (emphasis in original) (citing *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")).

Second, the Majority states that Beavers has already had an Act 84 hearing. *Beavers*, slip op. at 7. But this is more a statement of the factual background of this case than a legal conclusion concerning the argument presented. The problem is that the rate of deduction—an express *Bundy* item—has changed

since Beavers' hearing. As discussed above, to allow the rate of deduction to change without notice defeats the purpose of providing notice of that rate in the first place.

Next, the Majority states that, because the new rate of deduction has been set by statute rather than Department policy, "the concerns recognized by the Third Circuit in *Montanez* and our Supreme Court in [*Bundy*] and its progeny are not present." *Id.* at 8. But the Majority does not explain why that would be the case. The Supreme Court's concern was that inmates be provided due process with respect to their property. The focus was upon the property interest, not the source of the authority for the deductions. I see no difference in this regard between authority derived from a statute, a regulation, a policy, or an ad hoc decision-making process; quite simply, if the Department's action deprives an inmate of a property interest, then the inmate is entitled to due process protections.

The Majority then lists an assortment of "additional reasons" that the changed rate of deduction did not trigger a due process hearing. *Id.* The Majority states that the increase in the rate of deduction did not change the total amount of Beavers' court-ordered financial obligations or the account from which the funds would be deducted. *Id.* But the total amount of the financial obligation is a wholly separate *Bundy* item from the rate of deduction, and it does not explain why the rate of deduction from *new* deposits into the account may be changed without warning.

Next, the Majority states that, because the 25% figure is mandated by statute, the Department could not order another amount even if it did provide Beavers with due process. *Id.* But this was true as of our Supreme Court's 2020 decision in *Johnson*, where the Court nonetheless mandated that inmates be provided with notice and an opportunity to object to the deductions—either pre-deprivation or post-deprivation—so that they could "explain why the past and/or intended

PAM-6

deductions should not take place *notwithstanding the dictates of Act 84*." *Johnson*, 238 A.3d at 1183 (emphasis added). Although the Department may not alter the statutory amount of 25%, its constitutional obligation to provide inmates with notice has not been eliminated or otherwise modified, and it still may make errors subject to correction. The due process mandated by *Bundy* and *Johnson* may allow for the development of a "meritorious challenge along these lines," which "would then implicate the substantive remedy of restoring the prisoner's wrongly-deducted funds to his or her account." *Id.*

With regard to that error-detecting function of the due process hearing, the Majority states that Beavers is not entitled to such a hearing because he has not alleged any errors that a hearing might correct. *Beavers*, slip op. at 8. But this sidesteps the injury asserted. The issue before this Court is the deprivation of due process, the provision of which would allow for the potential development of an argument regarding such errors. Whether there were any statutory errors in the amount of the deductions or the source of the funds are questions for a different body at a different time. I do not understand why the presence or absence of such errors should determine whether Beavers is entitled to due process before the deprivation of his property.

In a footnote, the Majority suggests two other factors that may bear upon its conclusion, noting that the "deductions will reduce Beavers' debt," and that they advance "a legitimate Commonwealth interest" in rehabilitation of offenders and providing compensation to victims. *Id.* at 8 n.6. Neither observation justifies the outcome here. Reducing Beavers' debt is accomplished by means of removing funds from his account—funds in which he retains a property interest and, therefore, "any dispossession of that interest may only occur in conjunction with due process

of law." *Bundy*, 184 A.3d at 556. As for the legitimate governmental interests served by Act 84 deductions, the Majority's observation is a *non sequitur*. The interests served by Act 84 deductions have nothing to do with the Department's ability and obligation to conform those deductions to the requirements of due process. Many governmental actions serve important interests, but when they deprive an individual of a constitutionally protected property interest, neither their legitimacy nor their prudence excuses the failure to provide due process.

Beavers was entitled to notice and an opportunity to be heard before the increase in the rate at which funds would be deducted from his account. He was not provided such. Fortunately, as discussed above, our Supreme Court in *Johnson* had the foresight to articulate a remedy for such a circumstance: a post-deprivation process. At the very least, Beavers should be provided "notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84." *Johnson*, 238 A.3d at 1183. "Any meritorious challenge along these lines would then implicate the substantive remedy of restoring [Beavers'] wrongly-deducted funds to [his] account." *Id.*

Certainly, providing the necessary process to Beavers (and to other inmates in similar circumstances) would entail some additional administrative burden. However, whatever its reasons, in 2019 our General Assembly decided to increase the rate of Act 84 deductions, fully aware of the due process implications that the Supreme Court made clear the previous year in *Bundy*. *See* 1 Pa.C.S. §1922(4) (presuming that "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language");

*Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Jet-Set Restaurant, LLC*, 191 A.3d 817, 823-24 (Pa. 2018) (discussing principle that the legislature is presumed to be aware of decisions of the Supreme Court). The only consequence of that statutory amendment which should fall upon inmates is the mandated increase in deductions from their accounts after they receive all of the process due under *Bundy*—the consequence should not be that inmates' due process rights are swept away entirely.

For all of these reasons, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge